THE CAVERLY-GOULD COMPANY *v.* VILLAGE OF SPRINGFIELD AND
W. L. ALEXANDER.

February Term, 1910.

Present: ROWELL, C. J., MUNSON, WATSON, HASELTON, and POWERS, JJ.

Opinion filed May 7, 1910.

*Municipal   Corporations —Taxation —Exemptions —Contract—
Consideration—Exemption by Vote of Town—Forfeiture of
Exemption — Legislative   Power — Delegation — "General
Taxes"—"Special Assessments."*

Exemptions from taxation regularly made by vote of a town under
V. S. 365 are binding contracts, if seasonably accepted with a view
to the exemption and supported by a sufficient consideration.

The vote of a town, regularly had under V. S. 365, "to exempt from
taxation for a period of ten years all manufacturing establishments
investing a capital of five thousand dollars, which may be estab-
lished and put into operation during the next twelve months,"
was authorized by the statute, which did not require a special vote
to exempt each particular concern to which the exemption was ac-
corded, and the vote was in the nature of an offer which, when
seasonably accepted and acted upon by any one complying with its
requirements with a view to the exemption, resulted in a contract
binding on the town.

The language of the vote is plain, and cannot properly be construed to
imply that an exemption acquired thereunder should be lost by
subsequently leasing the exempt plant to be operated by a lessee
that conducted a different business in that town when the vote was
passed.

The rule that necessary implications of a written contract are as much
a part thereof as though plainly expressed therein does not apply
unless the implications arise from the language employed in the

instrument, or are indispensable to effectuate the intention of the parties.

When the language of a written instrument is obscure, imperfect, or ambiguous, it is open to construction, but in construing it the court can go no further than to collect the intention of the parties from the language employed as applied to the subject-matter in view of the attendant circumstances, and cannot, by implication, put into the instrument what the parties have left out of it, though by mistake, nor reject what they have put into it, unless repugnant to some other part.

When by legislative enactment, or authorized municipal vote, exemption from taxation is made to depend on the continuance of a business, the use of property for designated purposes, or other conditions, the exemption is forfeited on condition broken.

Although legislative contracts exempting from taxation are to be construed most favorably to the State when their meaning is reasonably doubtful, yet, if not reasonably doubtful, they should be construed so as to effectuate the intention of the parties, the same as are contracts between private persons.

Towns and villages are governmental agencies, and as such are peculiarly subject to legislative control and subordination; and when not restrained by the 'Constitution, as it is not in this State, the Legislature, having the power to tax, can confer that power on municipalities in such measure as it pleases; and as the power to tax includes the power to exempt from taxation, it may confer that power upon them in like measure; and, if it does so, the exercise of such right by the municipality in a legal way has the effect of statute law.

A vote of a town, regularly had under V. S. 365, to exempt a manufacturing plant from taxation for a specified time precludes an incorporated village in that town from assessing and collecting general taxes on such property during the time so specified, but not from the levy of special assessments thereon for municipal improvements.

There is a plain distinction between "general taxes" and "special assessments." General taxes are based on the fact that the government must have revenue, and are exacted on the principle that all citizens and property within its jurisdiction should contribute, without special benefit, to the expense of affording that common advantage which results from the general protection of persons and

property; while special assessments are exacted on the theory of special benefit conferred by a local improvement on the property assessed for the expense thereof.

APPEAL IN CHANCERY.   Heard on bill and answer at the June Term, 1909, Windsor County, *Hall,* Chancellor.   Decree for the orator.   The defendants appealed.

The pleadings show that defendant Fairbanks is collector of taxes of the village of Springfield; that the orator is a corporation organized under the laws of this State on June 1, 1898; that at a special meeting duly held on March 26, 1898, the town of Springfield voted "to exempt from taxation for a period of ten years all manufacturing establishments investing a capital of over five thousand dollars which may be established and put in operation during the next twelve months"; that, "relying upon and intending to accept and meet the provisions and conditions of said vote," and before the expiration of the twelve months therein limited, the orator put in operation in the village of Springfield in the town of Springfield, a manufacturing establishment, consisting of land, buildings, shafting, machinery, and power, at a cost of $50,000, whereof $20,000 was for machinery; that the orator operated this plant as a factory for about four years, and since that time it has been operated as such by the orator's tenants, and is still owned by the orator; that on June 18, 1903, the trustees of the village of Springfield "assessed against and upon said real estate of the orator a village tax of $50, and a village highway tax of $20," which taxes, with the proper warrant for their collection, have regularly come into the hands of defendant Fairbanks as such collector, who has regularly advertised said real estate of the orator for sale in satisfaction of said taxes and costs.

The bill prays for an injunction restraining defendants from further proceedings in the collection of said taxes.   A temporary injunction issued.

*Blanchard & Tupper* and *Stickney, Sargent & Skeels* for the orator.

*Fred H. Spaulding* and *Charles Batchelder* for the defendants.

Rowell, C. J. Section 365 of the Vermont Statutes, under which this case arose, reads as follows: "Manufacturing establishments, (except for manufacturing pulp, rough sawed lumber or charcoal), quarries, mines, and such machinery, tramways, appliances and buildings as are necessary for prosecuting the business, machinery put into unoccupied buildings, and all capital and personal property used in such business, if the amount invested exceeds one thousand dollars, may be exempt from taxation not exceeding ten years from the commencement of business if the town so votes. Such real and personal estate shall be appraised and set in the grand list and the termination of the exemption noted against it."

The defendants say that exemptions of this class are binding contracts when regularly granted and accepted, whether the statute so provides or not. And we think this is so, if they are supported by a consideration, which is as essential here as in contracts between private parties. 1 Cooley on Taxation, 3d ed. 114; *Home of the Friendless* v. *Rouse,* 8 Wall. 430, 437, 19 L. ed. 495; *Grand Lodge, etc.* v. *New Orleans,* 166 U. S. 143, 41 L. ed. 951, 17 Sup. Ct. 523.

But they claim that the exemption in question was not regularly granted, as the vote was a blanket vote, put out to any one who concluded to take advantage of it, and that the statute did not authorize such a vote, and therefore it is void. They rely on *Cox Needle Co.* v. *Gilford,* 62 N. H. 503, in support of the claim. But that case is not in point. There the statute was that towns might vote to exempt from taxation any establishments therein, "or proposed to be erected or put in operation therein," etc., and that the vote should be a contract binding for the term specified therein. The vote was to exempt "all capital of $5,000 or upwards that might thereafter be invested in the town for manufacturing purposes." The court said the vote was too general to be good; that if the statute was construed to authorize exemption by a sweeping vote of all establishments that might thereafter be erected, no force would be given to the word "proposed," which pointed to such particular and specific establishments as were at the time of the vote proposed by some person or persons to be erected and put in operation; that if the Legislature intended to confer such sweeping authority, it would have expressed its purpose by omitting the word "proposed," or

by substituting therefor the words, "which thereafter may," making the statute read, "towns may by vote exempt from taxation * * * any establishment therein, or which may thereafter be erected or put in operation therein."

It may be noticed in this connection that when our statute was first passed in 1867, it was like the New Hampshire statute in respect of establishments that it might be proposed to locate in the town, and in giving the assent of the town the force of a contract. But in 1869 those provisions were eliminated, and have never been restored. So there is nothing in our statute restricting towns as the New Hampshire statute does, but its language is general, and the vote may be as general as the statute, and with good reason, for a general vote might call in investors that the town would not otherwise learn about. Such a vote is like an offer of reward to the public at large for certain information, which becomes obligatory as soon as one, with a view to the reward, renders the specified service, if the offer was not previously withdrawn. And in the New Hampshire case the court virtually said that the vote would have been good had the statute been general. We hold, therefore, that the vote here was authorized by the statute, and that the town was bound by it when the orator acted upon it as it did with a view to the exemption. And the town evidently so understood it, for the property was appraised and set in the grand list and the termination of the exemption noted against it as the statute required.

But it is said that this construction ought not to be put upon the statute because a general vote might call in an undesirable business. But the answer is that the town can protect itself against that by its vote.

But the defendants say that though the vote is valid, yet, when the orator ceased doing business and leased its real estate to the machine company, which was organized and conducting a different business in Springfield long before the vote was passed, and not itself entitled to exemption, it ceased to be a manufacturing concern established and put in operation within the time limited, and therefore lost its right to further exemption; that the vote should be construed to exempt only such property as should be dedicated to a new industry, for that its purpose must have been to encourage the establishment of such industries with the expectation that they would become permanent, and ulti-

mately increase the taxable property of the town.   Several cases from other jurisdictions are referred to in support of this claim. Thus, in *Waterbury Co.* v. *Atlas Cordage Co.* 42 La. Ann. 723, 7 South. 783, the constitution of the State exempted from taxation, factories, property, and machinery employed in the manufacture of cordage; and it was held that when the factory in question was leased for the purpose of closing it to the manufacture of rope, and of stopping competition and reducing the supply, the declared purpose of the constitution was thereby directly contravened and the property made taxable.   So where a statute exempted municipal property from taxation, it was held to be its unmistakable intention that the exemption should extend only to such property as was actually used in the exercise of municipal functions, and not to property leased by the municipality, though the money realized therefrom was applied to a public purpose.   *Cincinnati* v. *Lewis,* 66 Ohio St. 49.   And where a municipality undertook to contract with a manufacturing company to exempt it from taxation on condition that it would conduct a certain specified business continuously to its full capacity for such a time, and give a mortgage to secure performance on its part, neither of which it did, but suspended operations and went out of business entirely,—it was held that even if the contract was binding on the municipality, there was such a failure on the part of the corporation to meet its requirements as would avoid the exemption.   *Power Co.* v. *Havre de Grace,* 102 Md. 33, 61 Atl. 662.

It is manifest that none of these cases are in point.   In one, the declared purpose of the constitution of the state was directly contravened; in another, the property was not used as the statute required; and in another, there was a breach of an express condition.

Nor are the Kentucky cases referred to any more in point. They are *Mengel Box Co.* v. *City of Louisville,* 117 Ky. 735, 79 S. W. 255, and *Continental Tobacco Co.* v. *City of Louisville,* 123 Ky. 173, 94 S. W. 11.   There the ordinance, in order to induce the location of more manufacturing establishments in the city, exempted any person, firm, or corporation that should permanently locate and conduct such establishments therein. The plaintiff in each of those cases had bought out concerns that were exempt under the ordinance, and the question in each was,

whether the plaintiff had located a new plant within the meaning of the ordinance, or was conducting the old plant; and it was held in one case that the plaintiff had located and was conducting a new plant, and therefore was entitled to exemption; and in the other case, that the plaintiff had not located a new plant, but was conducting the old plant, and therefore was not entitled to exemption. There, the grantees of the property were the ones claiming exemption; while here, it is the original investor, who is still the owner.

But the case at bar does not involve any of these questions, but is to be governed by the contract between the town and the orator, evidenced by the offer made by the vote of March 26, 1898, and its acceptance by the orator. The vote was, to exempt from taxation for ten years all manufacturing establishments investing a capital of over five thousand dollars that might be established and put in operation during the then next twelve months. This was the offer, and the orator accepted it by complying with its requirements in every particular therein expressed. But we are asked to read into it an unexpressed condition that the orator should continue the business or forfeit its right to exemption.

The rule undoubtedly is that the necessary implications of a written contract are as much a part of it as though plainly expressed in it. But in order to apply this rule, the implication must arise from the language employed in the instrument, or be indispensable to effectuate the intention of the parties. When the language employed is obscure, imperfect, or ambiguous, the instrument is open to construction, and then the prime object is, to ascertain the intention of the parties. But in that case the court can go no farther than to collect the intention from the language employed as applied to the subject-matter in view of the attendant circumstances. Nor can the court by implication put into a written instrument what the parties have left out of it, though by mistake; nor reject what they have put into it, unless repugnant to some other part. *Hudson Canal Co.* v. *Pennsylvania Coal Co.*, 8 Wall. 276, 288, 19 L. ed. 349.

It is undoubtedly true that when by constitutional provision, legislative enactment, or authorized municipal vote, exemption is made to depend upon a continuance of the business; the use of property for designated purposes; or other condition,—the

exemption is forfeitable on condition broken. And while it is true that legislative contracts of this class are to be construed most favorably to the state when their meaning is reasonably doubtful, yet it is also true that they are to be fairly construed, and if their meaning is not reasonably doubtful, they are to be construed so as to effectuate the intention of the parties, the same as are contracts between private persons. *Home of the Friendless* v. *Rouse,* 8 Wall. 430, 437, 19 L. ed. 495.

Following these rules, as we must, it is obvious that we can not read into this vote what we are asked to, for there seems to be no reasonable doubt about its meaning. Its language is neither obscure, imperfect, nor ambiguous, but is plain, complete, and explicit, and was evidently chosen with care and consideration; so it is not fairly open to construction, and we see no warrant for saying that the town left, or intended to leave, anything to implication, but think that it expressed, and intended to express, all it wanted to ask of those who accepted its offer, and that the orator had a right to understand it so. Nor has the town ever indicated to the contrary, as far as appears, but has always remained content. And this suggests the question, not made in argument, whether the village has any standing to enforce 'a forfeiture of the right of exemption if any there is. But it is not necessary to consider that question.

It is further objected that the vote of the town does not bind the village, for that the town has no interest in nor control over the taxes in question, as the village is an independent organization, and its needs for which assessments are made are entirely local; and for that the taxes are not within the exemption, which is general. But towns and villages are governmental agencies, and as such are peculiarly subject to legislative control and subordination; and when not restrained by the Constitution, as the town is not here, the Legislature, having the power itself to tax, can confer that power upon municipalities in such measure as it pleases; and as the power to tax includes the power to exempt from taxation, it may confer that power upon them in like measure; and if it does, and the municipality exercises it in a legal way, its action in that behalf has the force and effect of a statute law. *Colton & Moore* v. *Montpelier,* 71 Vt. 413, 45 Atl. 1039; *Town School District* v. *School District,* 72 Vt. 451, 48 Atl. 697. So the vote of the town precludes the

village, unless the taxes are assessments, and therefore not within the exemption. As between taxes, or general taxes, as they are sometimes called by way of distinction, and special taxes, or special assessments, there is a clear distinction. Taxes proper, or general taxes, are based upon the fact that the government must have revenue, and upon the principle that all citizens, and all property within its jurisdiction, should contribute, but for which the government renders no return of special benefit to any property, but only secures to the citizens that general benefit that results from protecting his person and property, and from the promotion of those various schemes that have for their object the welfare of all, while on the other hand, special taxes, or special assessments, are based upon the theory that when a local improvement enhances the value of neighboring property, that property should pay for the improvement. These are the kind of taxes that are not embraced in a general exemption. *Illinois Central R. R. Co.* v. *Decatur*, 147 U. S. 190, 37 L. ed. 132, 13 Sup. Ct. 293. The taxes in question do not belong to this class, but to the former class, and so are embraced in the exemption.

*Decree affirmed and cause remanded.*