PINELAND BAG CORPORATION *v.* RILEY, AUDITOR.[*]

(Division A.   March 29, 1926.)

[107 So. 554.   No. 25613.]

TAXATION. *Factory, merely making bags from kraft paper, made by another from wood pulp, held not exempt (Laws 1922, chapter 138, section 1).*

Factory, merely making paper bags from kraft paper, made by another from wood pulp, is not within Laws 1922, chapter 138, section 1, exempting from taxation new factories for making paper or paper products out of "wood pulp, cotton stalks, or other material;" rule of *ejusdem generis* applying.

---

[*]Corpus Juris-Cyc. References: Statutes, 36 Cyc, p. 1119, n. 36; p. 1120, n. 40; p. 1128, n. 58. Taxation, 37 Cyc. p. 924, n. 73.

APPEAL from circuit court of Hinds county, first district.

HON. W. H. POTTER, Judge.

Petition for mandamus by the Pineland Bag Corporation against George D. Riley, State Auditor. Demurrer to petition was sustained, and petition dismissed, and petitioner appeals. Affirmed.

*Wm. M. Colmer* and *Scott & Scott,* for appellant.

This cause is controlled by chapters 138 and 139, Laws of 1922, providing for the exemption of certain factories and industries in this state for a period of five years. We call attention to the particular portion of said act under which the appellant claims the right of this exemption: "*All factories for making paper or paper products out of wood pulp, cotton stalks or other material.*"

It is upon the construction of this section of the law that our right to the exemption stands or falls, of course, construed with reference to the entire chapter. It is our contention more specifically that the legislature intended to exempt factories manufacturing paper or paper products out of cotton, stalks, wood pulp and other materials, even though that "material" might be paper. Why can it be argued with reason that the legislature did not mean this? We know as a matter of fact that paper is manufactured from wood pulp, cotton stalks, *paper,* rags, rice straw and a large number of other materials. Could it be argued with reason that it was not the intention of the legislature to encourage factories to locate in Mississippi which would manufacture paper out of old paper, rags, or some other material. We know as a matter of fact that paper products are manufactured from paper and other materials. It is our contention that the words "other material" cover Kraft paper.

If any significance whatever is to be given to the words "*paper products*" in the statute, significance must also be given to the words "*other material.*"

We are not unmindful of the rule of strict construction in exemption statutes, requiring that in cases where ambiguous language is used and there are reasonable and well-founded doubts as to the intention of the legislature, such doubts must be resolved in favor of the state and against the would-be exemptors. But can it be argued successfully that there is such a reasonable doubt here as to the meaning of the legislature as to resolve that doubt in favor of the state. 37 Cyc. 894; *L. & N. R. R. Co.* v. *Gaines* (C. C.), 2 Fed. 266, 2 Flip. 621; 10 A. L. R. 1276.

Coming back to the contention of appellee that "*other material,*" as used in the statute here, cannot mean *paper*, we desire to cite *Washburn* v. *City of New Orleans,* 9 So. 37, holding that *wood shucks* are articles of wood and that a factory manufacturing such wood shucks was entitled to an exemption from taxes under the constitutional provision providing for exemption of factories manufacturing shoes, harness, furniture, and other articles of wood.

*Rush H. Knox*, Attorney-General and *Harry M. Bryan,* Assistant Attorney-General, for appellee.

The sole question presented is whether appellant upon the showing made in its petition for exemption filed with the state auditor is entitled thereto under chapters 138 and 139, Laws of 1922. That is, whether or not appellant is, in truth and fact, *that kind of industry* comprehended by the terms of the above acts.

The petition of appellant for exemption very frankly states that it does not manufacture paper bags from wood pulp or cotton but that *they are manufactured from paper which is purchased from other factories which have theretofore reduced it from wood pulp.* It is the contention of appellant that the words "other materials" in the statute comprehend "*kraft paper.*" It is my contention that to so construe the statute would be to credit the legislature with an absurdity because

in that case, the sentence here for construction would be made to read: " . . . all factories for making pa-per or paper products out of wood pulp, cotton stalks, or paper." I cannot construe the statute as meaning that factories which purchase *paper already manufactured by others from wood pulp* may secure exemption because of the fact that they are making therefrom a finished prod-uct, such as bags. If so, with equal force could it be ar-gued that all persons and corporations making station-ery, envelopes, etc., etc., from paper bought from others would be entitled to exemption.

The use of the words "wood pulp and cotton stalks" immediately preceeding "and other materials" gives, together with the words forming the subject of the clause, the positive idea that they were so used by the legisla-ture in the sense of developing manufactures from *raw products*. It cannot be denied that wood pulp and cot-ton stalks are raw products. The utilization of these raw products has come to be known only in compar-atively recent years. Did the legislature intend that all persons and corporations in Mississippi who simply took *paper* and by the process of changing its shape, size or color could therefore be exempt? The idea of develop-ment from the raw state is the warp and woof of this particular clause which we are examining, else it would have been wholly unnecessary to specify wood pulp, and cotton stalks at all. The words "from any materials" would have served the purpose. See *Greenville Ice & Coal Co.* v. *City of Greenville.* 69 Miss. 86, 10 So. 574; *Currie-Finch Brick & Lumber Co.* v. *Miller, Auditor of Public Accounts,* 123 Miss. 850, 86 So. 579.

It is our understanding of the law governing exemp-tions that the would-be exemptionist must so clearly show his right to it that there can be no reasonable doubt. I do not mean by this that there must be a strained construction. I do not mean that either the statute under which it is sought must grant the exemp-tion in express words or else there is such implication as will admit of no doubt whatever. The moment a rea-

sonable doubt arises as to whether a given statute grants exemption, that doubt, under the rulings of this court, must be resolved in favor of the taxing authority. *New Standard Club* v. *McGowen,* 111 Miss. 92, 71 So. 289, Ann. Cas. 1918E, 274; *Morris* v. *Riley, Auditor,* 99 So. 466; *Adams County* v. *Nat'l Box Co.,* 88 So. 168, 125 Miss. 598.

The lower court did not err when it sustained the demurrer of appellee, held that petitioner was not entitled to the exemption and dismissed the petition. We ask that the cause be affirmed.

*Scott & Scott,* in reply, for appellant.

Counsel has staked his entire case very largely on the rule *ejusdem generis.* We submit, however, that this rule has no application. The fundamental error made by counsel is in supposing that wood pulp is a raw material and similar to cotton stalks. See Volume 18 of the New International Encyclopedia, pp. 18-23, a treatise on paper showing that wood pulp is manufactured by a chemical process from wood. On page 19 under the heading "Raw Materials" wood pulp is not listed. On the other hand, cotton stalks are similar to the trees out of which wood pulp is made. There is as much likeness between kraft paper and wood pulp as there is between wood pulp and cotton stalks. The very essence of the rule *ejusdem generis* is that general words following the enumeration of specific subjects are generally restricted to subjects similar in kind to those specifically enumerated, unless the intention of the legislature to the contrary seems evident. When it is seen, therefore, that wood pulp is not a raw material, appellee's theory fails. See 25 R. C. L., sec 240; *Jones* v. *State* (Ark.), Ann. Cas. 1914C 302, and note; *McReynolds* v. *People,* 230 Ill. 623, 82 N. E. 945. In this case the difference between the materials specifically enumerated is the difference between a raw material and a manufactured product, and there is less difference be-

tween kraft paper and wood pulp than there is between wood pulp and cotton stalks.

Another mistake counsel makes is in giving more importance to the materials than the subjects to which the exemption was intended. There are two subject-matters here; to-wit, paper or *paper products*. Some meaning must be given to the subject *paper products*. If the construction contended for by appellee is correct, then it would have been idle for the legislature to have inserted the words "paper products" because if a factory makes paper, it would be entitled to the exemption; and if the legislature had simply provided an exemption for factories making paper, this would have been sufficient to exempt factories making paper and any kind of paper products. Therefore, it was useless to add the words paper products. The legislature must have intended by the use of these an exemption for a factory which did not manufacture paper but simply manufactured a paper product.

In *Greenville Ice & Coal Co.* v. *City of Greenville,* 69 Miss. 86, depended upon by the attorney-general, the court there said that the general words by a well-known rule of statutory interpretation must be referred to the particular words which they immediately follow, and would include only articles or things *ejusdem generis* with those specifically enumerated *unless the context clearly requires that the general words shall be construed in their larger signification.* This is our contention because of the essential difference between cotton stalks and wood pulp, and because of the double subject-matter on which the exemption operates. *Kansas City Ry. Co.* v. *Wallace,* 46 L. R. A. (N. S.) 115.

There is no more reason why the legislature as a matter of public policy should not have exempted this paper bag factory than it should have factories for making paper.

Admittedly, if the same concern manufactured paper and then manufactured paper products from said paper,

it would be exempt from taxation under the statute in question.

It is charged in the petition for mandamus, and the truth is, that a paper bag is a paper product. Therefore, if this appellant took cotton stalks, wood pulp, or any other of the well-known materials for making paper, among them being paper, according to the above-named encyclopedia, and made paper from any of these materials and then manufactured this paper so made into paper bags, it would be exempt from taxation.

The legislature is conclusively presumed to know the facts about which it is legislating. 36 Cyc. at p. 1135. The legislature is, therefore, presumed to know that it is not customary or usual for the same concern to manufacture paper and then to take this paper and manufacture paper bags. Paper bags, however, are a paper product. Therefore since it is admitted that if this appellant manufactured paper and then manufactured paper bags from the paper, it would be entitled to the exemption and in order to defeat this exemption the legislature would have to be credited with a desire to change the custom of the paper business. We insist that this court cannot impute such a motive to the legislature. In case, however, it rules against this exemption, this is exactly what it would do.

Argued orally by *W. M. Colmer,* for appellant, and *H. M. Bryan,* Assistant Attorney-General, for appellee.

McGOWEN, J., delivered the opinion of the court.

The appellant, Pineland Bag Corporation, filed its petition for a mandamus against George D. Riley, auditor of public accounts of the state of Mississippi, alleging that it was a foreign corporation domesticated under the laws of Mississippi. That it owns and operates a factory in Pascagoula, Miss., for the purpose of manufacturing a paper product, to-wit, paper bags, from kraft paper. That "kraft paper is made from wood pulp,

which is made from pine trees by a chemical process. All raw materials from which paper is made are first made into kraft paper, or some similar material, before any paper product can be manufactured therefrom. That said paper bags are of the kind that are sold to the paper bag trade generally." The petitioner alleged that it did not itself manufacture kraft paper, but it purchased same from other factories operating in Mississippi which make kraft paper from wood pulp, and that it was not usual for the same concern to make paper and then to manufacture bags therefrom. The petition alleged that under the law they were entitled to an exemption, which had been denied by the auditor of the state upon the advice of the attorney-general, and prayed that a writ of mandamus issue requiring the defendant auditor to issue the certificate of exemption for five years wrongfully withheld. Copies of the petitions presented to the auditor were attached to the petition for mandamus, and the circuit court below sustained a demurrer to the petition, and dismissed same, and the Pineland Bag Corporation prosecutes its appeal here.

The demurrer, in brief, challenged the sufficiency of the petition on the ground that the petition shows on its face that the Pineland Bag Corporation does not own and operate such a new factory or enterprise or public utility as was granted an exemption from *ad valorem* taxes for five years by the virtue of chapters 138 and 139 of the Laws of Mississippi of 1922; that the paper bags manufactured by the petitioner are made from paper already produced from the raw product described in chapter 138, and, therefore, the petitioner was not in the class described in said chapter, and defendant was without authority to grant the exemption.

We think the court below properly sustained the demurrer to the petition for mandamus. The essential part of chapter 138 upon which the petitioner claimed the right to exemption is as follows:

"Section 1. Be it enacted by the legislature of the state of Mississippi, that new factories and new enter-

prises of public utility hereafter established are granted exemption from *ad valorem* taxation on tangible property used in, or necessary to, the operation of the service or industry hereinafter named, but not upon the products thereof, for a period of five years . . . the new manufactures and new enterprises of public utility to be exempted are enumerated as and limited to . . . all factories for making paper or paper products out of wood pulp; cotton stalks or other material. . . ."

There is no contention by the petitioner in its petition or in its brief that it does anything but utilize manufactured kraft paper in producing paper bags, but it is argued that paper bags are paper products. If this be true, it was evident intention of the legislature, by its clear reference to wood pulp and cotton stalks, to exempt those factories which produce the manufactured articles from such raw materials as wood pulp, cotton stalks, and other raw material. At least, it is not clear that it was the legislative intent to exempt all those factories producing forms of paper products from manufactured paper, although that paper may have been produced from wood pulp.

There is no contention here that anything is produced by this petitioner from the raw material into the manufactured product. If the legislature had intended to exempt such factories as envelope factories or paper bag factories, it would have been the work of supererogation for the legislature to have added the words "wood pulp, cotton stalks, or other material." It was the manifest purpose of the legislature to encourage the conservation of such raw materials as were going to waste, such as wood from which wood pulp is manufactured and cotton stalks from which a form of paper may be produced.

In the case of *Currie-Finch Brick & Lumber Co.* v. *Miller, Auditor of Public Accounts,* 123 Miss. 850, 86 So. 579, Judge ETHRIDGE, as the organ of the court, in passing upon a similar statute said:

"In the case of *Greenville Ice & Coal Co.* v. *City of Greenville,* 10 So. 574, 69 Miss. 86, the court construing

a somewhat similar statute held that the rule *ejusdem generis* be applied, and held that ice did not come within the purview of the statute and was not exempt.''

Judge Ethridge announced the rule by which we are governed in the instant case as follows:

''It was also held that the statute was construed strictly against exemption from taxation or other public burdens, and that the party must come strictly within the statute allowing the exemptionist to obtain an exemption. Since that decision, the attorney-general's office, whose duty it is under the law to advise the auditor and other state officers, has constantly applied the rule there announced.

''We do not think that a plant for the manufacture of brick comes within the purview of the statute. The court below held the same view, and the judgment is affirmed.''

We do not think in the case before us the legislature had in mind, or intended to exempt, factories manufacturing articles or paper products from paper itself which had already been manufactured by another factory from wood pulp or cotton stalks; but we think the legislature intended to exempt those factories which produce paper or any other kind of paper products from raw materials, such as wood pulp and cotton stalks. It would have been so easy for the legislature to have written the statute exempting those factories producing paper products and omitted the words ''wood pulp or cotton stalks or other material,'' if they had intended to exempt factories manufacturing paper or paper products.

Giving effect to all the language employed in the statute, we are of opinion that only those factories producing paper or paper products from the raw material are entitled to the exemption.

*Affirmed.*