CHICAGO, MILWAUKEE, ST. PAUL & PACIFIC RAIL-
ROAD CO., Appellant, v. CUSTER COUNTY, Respond-
ENT.

(No. 7,247.)

(Submitted April 13, 1934. Decided April 20, 1934.)

[32 Pac. (2d) 8.]

*Messrs. Murphy & Whitlock,* for Appellant, submitted a brief; *Mr. M. N. Whitlock* argued the cause orally.

*Mr. Rudolph Nelstead* and *Mr. H. E. Herrick,* for Respondents, submitted a brief. *Mr. John J. Greene,* of Counsel, argued the cause orally.

MR. JUSTICE MATTHEWS delivered the opinion of the court.

In 1932 the plaintiff duly listed all of its property in Custer county for assessment and therein included the item "Power Plant, Machinery and Boilers" of the estimated value of $65,000. The assessor classified this property as falling within "class 4" of section 1999, Revised Codes of 1921, which fixed its "taxable value" at 30 per cent. of its actual value.

Contending that this property properly falls within class 2, which would render it taxable at 20 per cent. of its actual value, the plaintiff exhausted its statutory remedies, paid the first half of the 1932 taxes under protest, and instituted timely action for the recovery of the alleged excess payment, or $245.67. A trial before the court, without a jury, resulted in a judgment in favor of the defendant. The plaintiff has appealed from the judgment and assigns numerous errors, predicated upon the findings of fact and conclusion of law made and filed, but raising the sole question as to the proper classification of the property in dispute.

Section 1999, above, provides that: "For the purpose of taxation the taxable property in this state shall be classified as follows: * * * Class Two. * * * All agricultural and other tools, implements and machinery, gas and other engines and boilers * * * . Class Three. Livestock, * * * agricultural products; stocks of merchandise of all sorts * * * . Class Four. * * * Manufacturing and mining machinery, fixtures and supplies * * * ."

The property under consideration consists of "6 Marine type coal burning boilers, * * * ; 2 Westinghouse electrical

engines and generators combined, 2 Watertown electric generators and engines combined; 2 air compressors; several water pumps and fittings  *  *  * ."

All of this property constitutes a part of the plaintiff's repair-shops at Miles City, and is used primarily for the repair and maintenance of the rolling stock of the railroad. By the use of coal as fuel, the boilers produce steam power by which the electric generators are operated to produce electric current for the propulsion of the machinery in the repair-shops. The business of the plaintiff is transportation, and all of its activities are but necessary adjuncts to that business; while the shops occasionally "manufacture" a part of the replacement or breakage, the company manufactures nothing to be marketed.

While there are cases holding that electricity is a produce ▆▆ of nature and its generation by the use of power is but the conversion of one form of energy into another and not the manufacture of an article of trade. (*In re Hudson River Electric Power Co.*, (D. C.) 173 Fed. 934, affirmed (C. C. A.) 183 Fed. 701, 33 L. R. A. (n. s.) 454, and cases cited), the electricity which exists in nature is not subject to use; the current which will cause the wheels of industry to turn, or will light a city, must be produced by the employment of labor and machinery and is, therefore, generally said to be manufactured. (*Utah Power & Light Co.* v. *Pfost*, 286 U. S. 165, 52 Sup. Ct. 548, 76 L. Ed. 1038; *In re Charles Town Light & Power Co.*, (D. C.) 183 Fed. 160; *People* v. *Wemple*, 129 N. Y. 543, 29 N. E. 808, 14 L. R. A. 708; *Bates Machine Co.* v. *Trenton & N. B. Ry. Co.*, 70 N. J. L. 684, 58 Atl. 935, 103 Am. St. Rep. 811; *Beggs* v. *Edison Electric Illuminating Co.*, 96 Ala. 295, 11 So. 381, 38 Am. St. Rep. 94; *Kentucky Electric Co.* v. *Buechel*, 146 Ky. 660, 143 S. W. 58, Ann. Cas. 1913C, 714, 38 L. R. A. (n. s.) 907.)

It follows that machinery capable of being used for, and actually used in, the generation of electricity as a business, falls within the designation of "manufacturing  *  *  * machinery"; but, regardless of what specific machinery might

be used for, it is the use to which it is actually devoted that controls for purposes of taxation. (*Barnard Realty Co.* v. *City of Butte,* 50 Mont. 159, 145 Pac. 946.) ''The use to which the property is devoted and its productivity is the measuring stick in determining its proper classification * * * for the purposes of fixing the tax.'' (*Chicago etc. Ry. Co.* v. *Powell County,* 76 Mont. 596, 247 Pac. 1096, 1097.) Thus a gasoline engine, while held for sale by a hardware merchant, is but a part of his stock of merchandise, and would fall in Class 3; if sold to a farmer and used to pump water for his stock, it would become ''machinery'' within the meaning of the provisions of Class 2, and if sold to a miner and used to operate a hoist, it would become ''mining machinery,'' and fall in class 4; so that three identical machines might be respectively taxed on the basis of 20 per cent., $33\frac{1}{3}$ per cent. and 30 per cent.

Evidence was adduced to the effect that the machinery and the uses to which it was put was identical at Miles City with that at Deer Lodge, held to belong in Class 2 in the *Powell County Case,* above, with the exception that the generators at Deer Lodge were operated by electricity furnished by the Montana Power Company. It is immaterial to the question here considered whether the machinery used in the shops for the maintenance and repair of the rolling stock is powered by the use of energy purchased from the Power Company, or by coal purchased elsewhere; as a witness in the *Powell County Case* aptly phrased it: It is immaterial whether ''white coal'' (electricity) or black coal furnishes the power to drive the motors to run the generators.

In like manner you ''manufacture'' electricity by the operation of an internal combustion motor whenever you run your automobile, but in neither case is the manufacturing of the commodity the purpose of the operation; it is but a means to the end. ''The use to which the property is devoted,'' in the case of your car, is locomotion, travel; in the case of the railroad shops, ''the repair and maintenance'' of their means of transportation.

However, it appears in evidence here that an incidental use of the electricity generated is the lighting of the shops where the work is done, and the lighting of the yards, depot, and offices of the company at Miles City—a use not mentioned in the *Powell County Case*. While this use of the electricity saves the company the expense of purchasing electricity from some company engaged in the business of manufacturing electricity for sale, it has no "productivity"; the electricity so used is not generated with the idea of profit, and none of it is marketed. On this phase of the case, the operation is no different than that of the farmer who installs a Delco system for the lighting of his home and farm buildings.

The word "manufacturing" is not a technical word, but has a "common, ordinary meaning." (*Sharpe* v. *Hasey*, 134 Wis. 618, 114 N. W. 1118, 1119.) "A primary rule of construction is that the legislature must be assumed to have meant precisely what the words of the law, as commonly understood, import." (*Northern Pac. Ry. Co.* v. *Sanders County*, 66 Mont. 608, 214 Pac. 596, 599.) All persons who can be said to have "manufactured" an article are not to be classed as "manufacturers," regardless of circumstances, but rather only those who manufacture articles of trade as the principal part of their business. (*In re Kenyon*, 1 Utah, 47.) "A manufacturer * * * makes to sell, and depending for his profit on the labor which he bestows on the raw material." (*State* v. *American Sugar-Ref. Co.*, 51 La. Ann. 562, 25 So. 447, 453. See, also, *Nixa Canning Co.* v. *Lehmann-Higginson Co.*, 70 Kan. 664, 79 Pac. 141, 70 L. R. A. 653; *In re Church Con. Co.*, (D. C.) 157 Fed. 298; *Walker Roofing & Heating Co.* v. *Merchant & Evans Co.*, 173 Fed. 771, 97 C. C. A. 495, and lengthy note in 64 L. R. A. 33.) Where a person, engaged in a business other than manufacturing, incidentally manufactures something used in his regular business or as a by-product thereof, his business is not thereby transformed into a manufacturing business. (*Commonwealth* v. *Keystone Laundry Co.,* 203 Pa. 289, 52 Atl. 326; *State ex rel. Ernst* v. *State Board of Assessors*, 36 La. Ann. 347; 38 C. J. 968; 1 Fletcher's Cyc. of Corp. 129.)

The clear intention of the legislature is that machinery used in the business of manufacturing, "manufacturing machinery," and machinery used in carrying on mining operations, "mining machinery," should fall within "Class 4," while tools, implements and machinery employed as an aid to the operation of a business not devoted to the manufacture of any article of trade should be placed in "Class 2."

The judgment is reversed and the cause remanded to the district court of Custer county, with direction to enter judgment in favor of the plaintiff.

MR. CHIEF JUSTICE CALLAWAY and ASSOCIATE JUSTICES ANGSTMAN, STEWART and ANDERSON concur.