VICTOR CHEMICAL WORKS, a corporation, Plaintiff and Appellant, v. SILVER BOW COUNTY, et al., and ROBERT MAGUIRE, as County Treasurer, et al., Defendants and Respondents.

No. 9403.

Submitted November 2, 1955, Decided September 19, 1956.

301 Pac. (2d) 730.

Messrs. Corette, Smith & Dean, Butte, for appellant.

Mr. Arnold H. Olsen, Atty. Gen., Mr. William F. Crowley and Mrs. Vera Jean Heckathorn, Asst. Attys. Gen., Mr. H. O. Vralsted, Sp. Asst. Atty. Gen., Mr. Harold J. Pinsoneault, Asst. Tax Counsel, Board of Equalization, Mr. N. A. Rotering, County Atty., Butte, Mr. J. Frank Sullivan, Deputy County Atty., Butte, Mr. Lyman ——. Hall, Asst. Tax Counsel, Board of Equalization, Helena for respondents.

Mr. Leonard A. Schulz, Dillon, Amicus Curiae.

Mr. Kendrick Smith, Mr. Crowley and Mr. Pinsoneault argued orally.

MR. JUSTICE DAVIS:

Appeal from a final judgment entered by the district court for Silver Bow County, which denied the plaintiff and appellant, Victor Chemical Works, the recovery of certain taxes for the year 1952 paid under protest to the respondent county and its Treasurer, Robert Maguire, the defendants in the district court. The action here was properly and timely brought under R.C.M. 1947, section 84-4502, and companion statutes.

The record before us contains the judgment roll below where is found the amended complaint in which are pleaded two causes of action. Upon the defendants' demurrer thereto judgment passed against the plaintiff. Of these two counts the first is challenged, because it does not there appear that the plaintiff exhausted its administrative remedies before seeking relief in the courts. No such attack is made, however, upon the second count where admittedly facts are alleged sufficient to present for decision the controlling issue which was ruled against the plaintiff, i. e., whether under R.C.M. 1947, section 84-301, as amended by chapter 178, Laws of 1951, (hereafter chapter 178), the plaintiff is entitled to have its industrial plant near Silver Bow, Montana, put in Class Five (d), and thereafter taxed under R.C.M. 1947, section 84-302, at seven per cent of its full and true value. More particularly the plaintiff's right to the

classification claimed turns upon the further fundamental inquiry whether chapter 178 conflicts with the Constitution of Montana, specifically with sections 1, 2 and 11 of article XII, which in substance require that all property be uniformly assessed for taxation and taxed save only such as may be exempt by legislation enacted under section 2.

As the case comes here on this appeal this constitutional question which was raised and passed upon below contrary to the plaintiff's contention that chapter 178 is valid, and which is the gist of the four errors specified by it in this court, is squarely presented to us for decision, and accordingly must be answered to dispose of this controversy.

The facts well pleaded in the second cause of action found in the amended complaint stand admitted by the defendants' demurrer. These facts are to be summarized as follows: During the years 1951, 1952 and 1953 the plaintiff was the owner of an industrial plant near Silver Bow in Silver Bow County, consisting of land, buildings, machinery, fixtures and supplies devoted to the manufacture of elemental phosphorous, from which it makes elsewhere chemical compounds for sale. This property both real and personal was in 1951 first assessed for taxation in Silver Bow County. As an industrial plant it can not "be operated so as to produce a product which will be competitive in the cost thereof with the product of equal or similar industrial plants in operation for more than three years." On the contrary "it will take more than three years before this industrial plant * * * will be capable of such production and of such uniform and steady operation as to make it effective from the standpoint of competitive cost of production," primarily because such plants "have to be adjusted and geared in many complicated ways to the particular phosphate rock, which in this instance is produced for the most part from mines operated by plaintiff near Divide, Montana."

For the year 1952 this property was put in Class Four of section 84-301, and was accordingly assessed under section 84-302 at thirty per cent of its full and true value. This was

done despite the amendment made to section 84-301 by chapter 178, which in terms assigned the plaintiff's plant as industrial property to Class Five (d) where it would be assessed at the lower rate of seven per cent.

The plaintiff's application for reclassification consistent with the 1951 amendment was successively denied by the county and state boards of equalization, the plaintiff's plant was retained in Class Four of section 84-301, as that statute read before amendment, and the property which comprised that plant was accordingly assessed at the higher rate of thirty per cent. The plaintiff's total tax here for the year 1952 under this assessment was $40,884.24. One-half of this tax or $20,-442.12 the plaintiff timely paid on November 24, 1952, but under protest to the extent of $14,665.73, which represents the difference between the tax actually laid and the tax which would have been imposed, if the assessment had been made at the rate of seven per cent. It is the recovery of this difference which the judgment of the district court denied.

Section 84-301, as amended and so far as here material, reads as follows:

"84-301. For the purpose of taxation the taxable property in the state shall be classified as follows:

\* \* \* \* \* \*

"Class Four. All land, town and city lots, with improvements, manufacturing and mining machinery, fixtures and supplies, except as otherwise provided by the constitution of Montana, *and except as such property may be included in Class Five.*

"Class Five. \* \* \*

"(d). *Industrial property included in Class Four, for a period of three years after such property is first assessed.* \* \* \*"

Initially we recognize the rule oft repeated in this court, to which our attention is again directed by the briefs before us, that in weighing the constitutionality of chapter 178 we must, if it be possible, read its language in harmony with the constitution both state and federal. We enter upon our

312

task with the presumption in mind that this statute is constitutional, and that all doubts are to be resolved in favor of its validity, if that reasonably can be done. We agree further with counsel that the invalidity of chapter 178 must be demonstrated beyond a reasonable doubt before this court will be justified in declaring it unconstitutional and void. Otherwise put, we apply the rule here that chapter 178 will not be stricken down upon constitutional grounds, unless its violation of the fundamental law is clear and palpable, the classification it makes illusory and unreal. Compare Wheir v. Dye, 105 Mont. 347, 352, 353, 73 Pac. (2d) 209; Heisler v. Thomas Colliery Co., 274 Pa. 448, 459, 118 A. 394, 24 A.L.R. 1215.

Against this background the plaintiff's counsel argue that chapter 178 is to be upheld for reasons which are fairly summarized as follows, viz.:

(1) Other states have enacted similar statutes which have been sustained under their constitutions usually upon the ground that it lay within the power of the legislature to grant exemptions from taxation in whole or in part to encourage industry or to further some other recognized public policy.

(2) Chapter 178 makes a reasonable classification of property for the purpose of taxation which falls within the sweep of the legislature's plenary power as restricted by section 11, article XII, Constitution of Montana, and as defined by this court in Hilger v. Moore, 56 Mont. 146, 182 Pac. 477.

At the threshhold of our consideration of these contentions we concede generally that our Constitution in section 11, article XII, expressly recognizes the right of the legislature to classify property for taxation, and that the doctrine of Hilger v. Moore, supra, confirms this legislative function. But at this point we also call to mind that the provisions of our Constitution, which limit the otherwise unlimited power of the legislature to enact laws for the assessment and taxation of property, are essentially *sui generis*. Hence we are no differently situated now in our approach to the problem presently before us than was this court when Hilger v. Moore was decided.

What was written in 1919 in the Moore case of the value of authorities cited from other states is equally true today, viz., "* * * but they [decisions in other courts] are practically without value in this instance. They construe constitutional provisions altogether unlike our own. Indeed, no other state in the Union has provisions in its Constitution similar to those [article XII] of ours enumerated above. Some of these may be found in the Constitution of one state; some in another; some of them cannot be found in the Constitution of any other state." Hilger v. Moore, supra, 56 Mont. at page 172, 182 Pac. at page 482. As much must be said for the many cases pressed upon us on this appeal by counsel for the plaintiff; and here we might well leave their citation of these decisions in other jurisdictions with the short comment that they are not in point in Montana.

But because of the vigor nevertheless with which these authorities are urged as persuasive of the validity of chapter 178 we think it not time wasted to turn in some detail to them to make it plain that they are not pertinent to the question before us whether chapter 178 squares with the peculiar language of the Constitution of Montana.

For example, in State ex rel. Bank of Eagle v. Leonardson, 51 Idaho 646, 656, 657, 9 Pac. (2d) 1028, there was drawn in issue a specific exemption from taxation established by the Idaho legislature for stock in certain building and loan associations and certain secured credits. Article VII, section 5, of the Idaho Constitution contains substantially the same language as that found in article XII, section 11, of our Constitution. But it also contains this proviso, which we do not have in Montana, whether in sections 1, 2 or 11 of article XII, or elsewhere, viz., "* * * that the legislature may allow such exemptions from taxation from time to time as shall seem necessary and just, and all existing exemptions provided by the laws of the territory, shall continue until changed by the legislature of the state: * * *." And since this court has heretofore held in Cruse v. Fischl, 55 Mont. 258, 263, 175 Pac. 878,

and Stoner v. Timmons, 59 Mont. 158, 196 Pac. 519, that under the Montana Constitution the legislature is forbidden to exempt any property from taxation other than that specifically mentioned in article XII, section 2, it follows that the opinion in the Leonardson case by the Idaho court is no authority at all for us in determining whether Victor Chemical Works is entitled to the classification it claims under chapter 178.

In the Alabama Supreme Court there is citation of Crow v. General Cable Corporation, 223 Ala. 611, 137 So. 657, 658, where it was held that the ''legislative power to exempt industrial plants from taxation for a limited period as an inducement to the location of same in the state is not to be questioned.'' But the Alabama Constitution does not deny either expressly or by necessary implication the legislature the general power to exempt property from taxation, i. e., unless its action be obviously capricious or arbitrary. To the contrary sections 2 and 17, article XII, of our Constitution, as interpreted and applied in the Fischl and Timmons cases, does expressly forbid all exemptions from taxation whether reasonable or seemingly in the public interest, i. e., beyond those expressly mentioned in section 2. Neither the substance nor the import of sections 1, 2, 11 and 17, article XII, of the Montana Constitution are to be found in Alabama. Necessarily then the Alabama Supreme Court has consistently held that the Alabama Constitution does not prohibit exemptions from taxation which in the exercise of a sound judgment the legislature may make. See State v. Alabama Fuel & Iron Co., 188 Ala. 487, 508, 509, 66 So. 169, L. R.A. 1915A, 185. The Crow decision which is plainly a correct interpretation of the Alabama Constitution is for that reason no authority with us by which we may measure the validity of chapter 178 under an entirely different instrument embodying this state's organic law.

Likewise of County Commissioners of Carroll County v. B. F. Shriver Co., 146 Md. 412, 126 A. 71. In 1914 the Maryland General Assembly authorized the county commissioners of any county to exempt from taxation certain property of those en-

gaged in manufacturing. The commissioners of Carroll County adopted a resolution putting into effect for that county the exemptions authorized. The Maryland Constitution puts no restriction whatsoever upon the power the General Assembly to exempt from taxation as it may determine is in the public interest. More exactly again in the Maryland Constitution there is found no provision like section 2, article XII, of the Montana Constitution. Nor does the Maryland Court of Appeals in the Carroll County case concern itself with the constitutionality of the exemption granted. In no way can that decision aid the plaintiff's case with us; for what the Constitution of Maryland permits the Constitution of Montana expressly forbids.

Iowa by statute, Iowa Code 1927, section 6944, subd. 20, I.C.A. section 427.1, subd. 20, exempted from taxation the capital stock of a manufacturer. Compare Appeal of Koss Construction Co., 214 Iowa 125, 241 N.W. 495. Connecticut by chapter 205, Connecticut Public Acts 1911, page 1479, exempted from taxation for not more than twenty years certain tracts "planted with forest trees". Compare Baker v. Town of West Hartford, 89 Conn. 394, 94 A. 283. In Vermont by section 689, Vermont General Laws, a town was empowered to vote certain exemptions from taxation for manufacturing establishments, their equipment and the capital used in the business. Compare Rixford Manufacturing Co. v. Town of Highgate, 102 Vt. 1, 144 A. 680; Caverly-Gould Co. v. Village of Springfield, 83 Vt. 396, 76 A. 39; Colton v. City of Montpelier, 71 Vt. 413, 45 A. 1039. But in the Constitutions of Iowa, Connecticut and Vermont there is no language comparable to sections 1, 2 and 11, article XII, of the Montana Constitution. Necessarily then the exemptions allowed by the legislatures in these states were sustained.

In Kentucky section 171 of its Constitution expressly grants the General Assembly the "power to divide property into classes and to determine what class or classes of property shall be subject to local taxation. * * *" Hence section 4019a-10, Kentucky Statutes, which grants certain exemptions from local taxation,

has been consistently sustained by the Kentucky Courts. Compare Illinois Central Railroad Co. v. City of Paducah, 228 Ky. 65, 14 S.W. (2d) 172; City of Owensboro v. Dark Tobacco Growers' Association, 222 Ky. 164, 300 S.W. 350; Gray v. R. J. Reynolds Tobacco Co., 200 Ky. 47, 252 S.W. 134. In Mississippi by section 182, article VII, of its Constitution the legislature is expressly empowered to "grant exemption from taxation in the encouragement of manufactures and other new enterprises of public utility extending for a period of not exceeding five years, * * *." The validity of chapters 138 and 139, Laws of Mississippi 1922, which granted such an exemption, was necessarily recognized in Pineland Bag Corporation v. Riley, 142 Miss. 574, 107 So. 554. In Oklahoma when the Territorial Legislature enacted chapter 18, Oklahoma Laws 1899, which exempted from taxation certain businesses for a period of ten years, there was no prohibition in the organic federal law forbidding such an exemption which after statehood was therefore for obvious reasons recognized by the state supreme court. See State v. Pioneer Mills, 122 Okl. 6, 250 Pac. 120. For reasons equally obvious none of these decisions can be considered helpful or persuasive on this appeal of the validity of chapter 178.

The decisions in Pennsylvania under sections 1, 2 and 3, article IX, of the Pennsylvania Constittuion, P.S., which are in some particulars similar to sections 1, 2, 7 and 11, article XII, of the Montana Constitution, have sustained certain exemptions from taxation granted manufacturing corporations under the Act of June 7, 1879, Laws of Pennsylvania 1879, page 112, as supplemented particularly by the Act of June 30, 1885, Laws of Pennsylvania 1885, page 199, the Act of June 1, 1889, Laws of Pennsylvania 1889, pages 420, 431, and the Act of July 22, 1913, Laws of Pennsylvania 1913, pages 903, 905, 72 P.S. sections 1871, 1891, 1892. See Hawes Manufacturing Company's Appeal 1 Mona. Pa. 353, 17 A. 219; Commonwealth v. Germania Brewing Co., 145 Pa. 83, 22 A. 240; Commonwealth v. United States Electric Light Co., 7 Pa. Co. Ct. R. 90. Compare Commonwealth v. Glendora Products Co., 297 305, 146 A. 896.

But these statutes in Pennsylvania are so unlike chapter 178 that the opinions of the Pennsylvania Supreme Court construing them furnish no support for the validity of our law when it is read in the light of what this court has said in Cruse v. Fischl, supra, and Stoner v. Timmons, supra. If indeed the statutes in Pennsylvania and Montana were alike and there were then to be found a direct conflict between the views of the Pennsylvania Court and the decisions of this court, which we have noted, we would prefer to follow our own precedents. On the tenuous authority of the Pennsylvania cases we are not persuaded we should depart at this late date from the plain language of the Fischl and Timmons opinions, with which we wholly agree.

The first premise of the case made for the plaintiff, viz., that chapter 178, read as a statute which allows a partial exemption from taxation for industrial property, is not open to challenge on constitutional grounds, because other courts in other states have sustained similar statutes likewise designed to foster industrial growth, must be rejected. The authorities upon which that argument is made are not pertinent under our Constitution. The argument itself is directly met and denied by section 2, article XII of that Constitution, and by our own decisions of long standing in Cruse v. Fischl and Stoner v. Timmons, which we are convinced we should recognize today as the settled law of Montana. Accordingly we have no reasonable doubt that construed as a statute granting a partial exemption from taxation chapter 178 is obnoxious to our Constitution, and therefore void, unless it can be sustained upon some other ground.

But the only other ground suggested upon which chapter 178 may be sustained as a constitutional exercise by the legislature of its right under the Constitution of Montana to levy taxes is that this statute may be read as a law which classifies property for the purpose of taxation within the meaning of section 11, article XII, as construed and applied in Hilger v. Moore, supra; Chicago, Milwaukee & St. Paul Railway Co. v. Powell

County, 76 Mont. 596, 247 Pac. 1096; Chicago, Milwaukee, St. Paul & P. Railroad Co. v. Custer County, 96 Mont. 566, 32 Pac. (2d) 8; Bank of Miles City v. Custer County, 93 Mont. 291, 19 Pac. (2d) 885, and similar cases. We have no quarrel with these decisions. We agree that the legislature may consider the use of industrial property and its productivity, and consistent with its appraisal of these factors may classify industrial property for taxation as such. But on the face of chapter 178 itself the legislature has made no such classification; and here we think our decisions in Hilger v. Moore and in the cases since, which have relied upon that precedent, are conclusive authority that the exemption from taxation which section 84-301, as amended by that chapter, would permit is not under any construction a classification of property within the meaning of our Constitution. In our view the language itself of the statute makes the point.

Chapter 178 speaks first of ''Industrial property included in class four,'' and then singles out the industrial property which is to be reclassified in Class Five (d) as ''such property'' for a period of three years after it ''is first assessed.'' The reclassification here expressly made bears no relation at all even by implication to the productivity or the use of the property reclassified. That property may well be a replacement for an older or obsolete building or piece of machinery, which nevertheless at once takes its place as an integral part of a continuous and theretofore long continued industrial operation at the peak of its productivity. We can not agree that such a reclassification of property already once classified for the purpose of taxation is reasonable or consistent with our Constitution. By this reclassification, if the statute be valid, there is partially exempted from the taxes exacted on account of other industrial property in the same class a new lathe installed in the place of an older lathe, or a new diesel engine which replaces an older steam engine, or a new hydroelectric plant which takes the place of an older and perhaps less efficient steam generator, although in each case the replacement when first as-

sessed is in fact part and parcel of the same industrial operation which is itself neither new nor lacking in long continued use and sustained production. And here the validity of chapter 178, we must remember, is not to be determined by what has been done under it, but by what may be done consistent with its provisions. State ex rel. Holliday v. O'Leary, 43 Mont. 157, 164, 115 Pac. 204; State ex rel. Redman v. Meyers, 65 Mont. 124, 129, 210 Pac. 1064; State ex rel. Malott v. Board of County Com'rs, 89 Mont. 37, 63, 64, 296 Pac. 1, and cases cited. As written it permits the grossest discrimination between property of the same class.

However sound the economic and social reasons may be which underlie this legislation (and we do not express any opinion upon them), we cannot sustain chapter 178, unless we find it to be within the power of the legislature to enact. With its wisdom as legislation we have no concern. But we are concerned with the vital question whether by this statute the fundamental law of the state which governs both the legislature and this court has been transgressed. We think for the reasons we have given it has been, that on its face chapter 178 is obnoxious to the mandates of our Constitution.

Yet if this were all there is to the point here, we would be inclined to defer to the contrary judgment of the legislature, which by enacting chapter 178 undoubtedly expressed the opinion that in its view this statute was not at war with the Constitution, and which as a coordinate branch of the state government is touched as is this court with the necessity for observing and giving effect to that instrument. In other words, if the constitutional issue now before us embraced only a difference of opinion between this court and the legislature, we should be inclined to say, as the court did say in Hilger v. Moore, supra, 56 Mont. at page 177, 182 Pac. at page 484, that while the conclusion of the law is constitutional is not "entirely free from doubt", we must nevertheless sustain it because of a reasonable doubt that it is invalid.

But such is not the case at bar. The question, which is raised

here, is not thus easily answered. The reasoning of this court read in the opinion in Hilger v. Moore, which we are bound to respect, and the conclusion reached there by this court, which we are bound to follow, strike down any suggestion that chapter 178 sets up a classification of property for taxation which we can sustain.

The heart of Hilger v. Moore, as applied to this case, is found at 56 Mont. 175, 182 Pac. 483, where there is quotation from the opinion of the Supreme Court of the United States in Michigan Central Railroad Co. v. Powers, 201 U.S. 245, 293, 26 S. Ct. 459, 50 L.Ed. 744, to this effect:

" '* * * It is enough that there is no discrimination in favor of one as against another of the same class, and the method for the assessment and collection of the tax is not inconsistent with natural justice.' "

When we read the opinion in the Moore case and apply the language of that opinion just quoted to the statute before us, we are persuaded that Hilger v. Moore is controlling authority for the conclusion which we reach on the face of the statute itself, viz., that chapter 178 does not set up a classification of property for taxation which accords with the Constitution of Montana. We are persuaded indeed that this court in Hilger v. Moore would not have sustained chapter 51, Laws of 1919, there challenged, had the court then been of the opinion that that chapter worked a "discrimination in favor of one as against another of the same class," which is exactly what chapter 178, Laws of 1951, accomplishes as we read it.

Here the plaintiff's industrial plant is first and properly put with other property of like kind in Class Four. This classification is made and is sustained by the reasoning of the court in Hilger v. Moore to this effect:

"In theory, the doctrine of classification seeks * * * to shift the burden of taxes from property, as such, to productivity, or, in other words, to impose the burdens of government upon property in proportion to its use, its productivity, its utility, its general setting in the economic organization of society, * * *."

Otherwise the classification of the plaintiff's property is with-
 justification at all whether it is put in Class Four
or Class Five (d). But then to take this same property out
of Class Four where it has first rightly been classified for tax-
ation consistent with the doctrine of Hilger v. Moore, and there-
after to assign that property to Class Five (d) of section 84-301,
as amended, for special treatment that there it may enjoy a par-
tial exemption from the taxes laid upon other property found
originally with it in Class Four is to work a patent and un-
denied discrimination which falls precisely within the con-
demnation both of this court in the Moore case and of the
Supreme Court of the United States in the Powers case, upon
which the opinion in the Moore case depends. Here chapter 178
sets the plaintiff's industrial plant apart from other property
of the same general kind and nature, and obviously discrim-
inates ''in favor of one as against another of the same class''
by taxing the one at seven per cent, the other at thirty per
cent of its full and true value. It is equally obvious that here
also the plain mandate of our Constitution as we read sections
1 and 11, article XII, is thwarted, if we give effect to any such
attempted classification. We decline to do so upon the author-
ity of Hilger v. Moore, supra, and as well of State ex rel. Nor-
thern Pacific Railway Co. v. Duncan, 68 Mont. 420, 219 Pac.
638; Fruit Growers' Express Co. v. Brett, 94 Mont. 281, 293,
294, 22 Pac. (2d) 171; State v. Sunburst Refining Co., 73 Mont.
68, 79, 80, 235 Pac. 428; Hayes v. Smith, 58 Mont. 306, 315,
192 Pac. 615; State v. North American Car Corporation, 118
Mont. 183, 193, 164 Pac. (2d) 161. Compare State ex rel.
Snidow v. State Board of Equalization, 93 Mont. 19, 37, 38,
17 Pac. (2d) 68, 18 Pac. (2d) 804. Beyond any reasonable
doubt chapter 178 is an unconstitutional exercise of the legis-
lative function to classify property for taxation. It is our
plain duty to strike it down. The judgment of the district
court must therefore be affirmed.

MR. CHIEF JUSTICE ADAIR, and MR. JUSTICE BOT-TOMLY, concur.

MR. JUSTICE ANGSTMAN (dissenting in part and concurring in part).

I disagree with the majority opinion so far as it holds that chapter 178, Laws of 1951, is an exemption and not a classification statute.

To be sure, our classification statute, section 84-301, R.C.M. 1947, in a certain sense is also an exemption statute. To illustrate: Property in Class Two is assessed at twenty per cent of its true and full value. Section 84-302. Eighty per cent of the value is exempt from taxation.

Likewise, property in Class Three is taxed on the basis of thirty-three and one-third per cent of its value. In effect then sixty-six and two-thirds per cent is exempt from taxation. Yet this court in Hilger v. Moore, 56 Mont. 146, 182 Pac. 477, sustained the classification statute.

In my opinion a statute could be enacted to encourage new industries to enter Montana, which would have the effect of giving them a tax benefit for a three year period without violating sections 1, 2, 7, or 11 of Article XII, of our Constitution, and without violating the rule of the cases of Cruse v. Fischl, 55 Mont. 258, 175 Pac. 878, and Stoner v. Timmons, 59 Mont. 158, 196 Pac. 519, if there was not undue discrimination against a going concern engaged in the same business in the same locality.

Such a statute would be a classification and not an exemption statute. It would place the property in a different class for the first three years of its operation.

As pointed out in the majority opinion, where the Constitution does not prohibit the granting of exemptions it has been held that the legislative power to exempt industrial plants from taxation for a limited period as an inducement to the location of the same in the state cannot be questioned, and "Whether the benefits to accrue warrant such exemption is a matter of

legislative policy." Crow v. General Cable Corporation, 223 Ala. 611, 137 So. 657, 658. It is better if the legislature so determines to grant special tax consideration for a limited period than not to have the industry in the state at all.

The purpose of such exemption statutes is to encourage the location of industries in the state, thereby affording labor to more people, distributing payrolls in the community and increasing the value of property generally in the community, due to the necessity of providing homes for more people and the general circulation of more money in the community. Illinois Central Railway Co. v. City of Paducah, 228 Ky. 65, 14 S.W. (2d) 172, County Commissioners of Carroll County v. B. F. Shriver Co., 146 Md. 412, 126 A. 71.

The legislature of this state has power to classify property for the purpose of taxation. Hilger v. Moore, supra.

"The use to which the property is devoted and its productivity is the measuring stick in determining its proper classification under the act for the purposes of fixing the tax. Although such machinery may be used in manufacture, yet we are of opinion that the use to which it is actually devoted is controlling for purposes of taxation. Barnard Realty Co. v. City of Butte, 50 Mont. 159, 145 Pac. 946." Chicago, Milwaukee & St. Paul Railway Co. v. Powell County, 76 Mont. 596, 247 Pac. 1096, 1097.

To the same effect is Bank of Miles City v. Custer County, 93 Mont. 291, 19 Pac. (2d) 885; Chicago, Milwaukee, St. Paul & Pacific Railway Co. v. Custer County, 96 Mont. 566, 32 Pac. (2d) 8; Wheir v. Dye, 105 Mont. 347, 73 Pac. (2d) 209.

Whether or not a particular classification may stand depends upon whether it precludes the assumption that it was made in the exercise of legislative judgment and discretion. Bank of Miles v. Custer County, supra; Montana Beer Retailers' Protective Association v. State Board of Equalization, 95 Mont. 30, 25 Pac. (2d) 128.

A distinction or classification made by the legislature is not arbitrary if any state of facts reasonably can be conceived

that would sustain it. Rast v. Van Deman & Lewis Co., 240 U.S. 342, 36 S. Ct. 370, 60 L.Ed. 679, L.R.A. 1917A, 421, Ann. Cas. 1917B, 455; Borden's Farm Products Co. v. Baldwin, 293 U.S. 194, 55 S. Ct. 187, 79 L.Ed. 281; Metropolitan Casualty Ins. Co. of New York v. Brownell, 294 U.S. 580, 55 S. Ct. 538, 79 L.Ed. 1070.

As above pointed out there are many things which the legislature might reasonably have regarded as beneficial to the state and its people and as sufficient cause to encourage the bringing in of new industries into the state by thus classifying their property for taxation purposes for a period of three years.

There is general language, by way of dictum, in the case of State v. North American Car Corporation, 118 Mont. 183, 164 Pac. (2d) 161, which it is contended is at variance with the views herein stated. However, upon close analysis it will be seen that there is in fact a difference, if we assume the allegations of the complaint are true, which on demurrer we must.

Here there are allegations that there is a difference between an industrial plant which has been in operation for three years or more and one that is just beginning its operation. According to these allegations the classification here is based upon substantial distinctions which make one class really different from another within the rule of Northwestern Mutual Life Insurance Co. v. State of Wisconsin, 247 U.S. 132, 38 S. Ct. 444, 62 L.Ed. 1025, and Northern Pacific Railway Co. v. Sanders County, 66 Mont. 608, 214 Pac. 596.

I concur in the conclusion reached in the majority opinion because the statute here considered is so indefinite in its wording that it does not actually encourage new industries in the state, if that is its purpose. Under the statute any new piece of industrial machinery takes the lesser rate of taxation for the three year period from the time it is first assessed and this without reference to the length of time that the industry as such has been operating.

MR. JUSTICE ANDERSON:

The majority opinion reaches out beyond that which is necessary to a decision and for that reason I do not subscribe to it. I agree with the result reached.