## DEWELL et al. v. BOARD OF COM'RS OF HUGHES COUNTY.

Comp. Laws, §§ 607–609, authorize the county board to erect and repair county buildings, and make contracts therefor. Laws 1889, Chap. 49, amending Sec. 609, provides that the provisions of such section shall apply to all contracts for fuel, stationery, and all other articles for the use of the county, or labor to be performed therefor, when the amount to be paid therefor during any year exceeds $100. Laws 1891, Chap. 14, Sec. 104, provides that the treasurer shall give notice of sale of real property by publication in a newspaper in his county, if there be one, and, if there be none, by written or printed notices posted, etc. *Held*, that it is the duty of the county treasurer, and not of the county board, to designate the paper in which to publish the tax-sale notices.

(Opinion filed April 18, 1896.)

Appeal from circuit court, Hughes county. Hon. LORING E. GAFFY, Judge.

Action to compel defendant to accept plaintiffs' bid for printing the notice of sale of real property for taxes for the year 1894, and to award them the contract therefor. Defendant had judgment, and plaintiff's appeal. Affirmed.

The facts are stated in the opinion.

*Albert Gunderson* and *W. L. Shunk*, for appellants.

*John A. Holmes* (State's Attorney, Hughes county), for respondent.

HANEY, J. The only question presented by this appeal is whether it was the duty of the board of county commissioners to award the contract for printing the notice of sale of real property for taxes of 1894 to the lowest responsible bidder. Plaintiffs were such bidders, and brought this action to compel the board to accept their bid and award them the contract. The learned circuit judge decided that the publication of the

notice was under the control of the county treasurer, and refused to issue a mandate requiring the board to act.    Plaintiff's appeal.

Prior to 1889 the board had authority to provide for the erection and repairing of court houses, jails, and other necessary buildings within and for the county, and to make contracts on behalf of the county for the building and repairing of the same.    It was required to advertise for bids for the erection of such buildings, and to accept the lowest responsible bids offered.    Comp. Laws, §§ 607-609.    In 1889, Sec. 609 was amended by adding thereto the following:    "The provisions of this section shall apply to all contracts for fuel, stationery and all other articles for the use of said county, or labor to be performed therefor when the amount to be paid for the same during any year exceeds the sum of one hundred dollars; provided, that in all such cases advertisement for bids therefor need not be for more than three consecutive weeks in some weekly newspaper published in said county and provided also that all contracts for the furnishing of stationery, blank books and supplies generally for all county officers shall be made at the first session of the regular meeting in April to run for the period of one year.    That all acts and parts of acts in conflict herewith be and the same are hereby repealed."    Laws 1889, Chap. 49, § 104.    Laws 1891, Chap. 14, provides:    "The treasurer shall give notice of the sale of real property by publication thereof once a week for three consecutive weeks, commencing the first week in October preceding the sale, in a newspaper in his county, if there be one; and if there be no newspaper published in his county he shall give notice by written or printed notice, posted at the door of the court house or building in which courts are commonly held, or the usual place of meeting of the county commissioners, for three weeks previous to the sale.    Such notice shall contain a notification that all lands on which the taxes of the preceding year or years remain unpaid will be sold and the time and place of the sale; and said notice must con-

.tain a list of the lands to be sold and the amount of taxes both real and personal, due. The county treasurer shall charge and collect in addition to the taxes. and interest and penalty the sum of ten cents on each tract of real property and on each town lot advertised for sale, which sum shall be paid into the county treasury and the county shall pay the costs of publication, but in no case shall the county be liable for more than the amount charged to the delinquent lands for advertising."

We discover no difficulty in construing these legislative enactments so that effect may be given to each. In the first place the printing of the tax list is not included in the act of 1889. The original section required contracts for building and repairing certain county buildings to be let to the lowest bidder. By the amendment there was added to this class of contracts all contracts for fuel, stationery, and all articles for the use of the county, or labor to be performed therefor, when the amount to be paid for same during any one year exceeds the sum of $100. Certainly printing legal notices cannot be covered by the terms "fuel, stationery or other articles for the use of the county," nor by the words "blank books and supplies for all county officers." The word "supplies," as here used, clearly signifies pencils, paper, rubber bands, blanks, ink, and articles of that description required and constantly used by county officers. Its meaning must be measured and controlled by the connection in which the word is employed, the evident purpose of the act, and the subject to which it relates, namely, "stationery and other articles for the use of the county;" it being required that contracts for such articles shall be made at the regular meeting in April, to run for one year. Then the printing of the tax list is not embraced by the section as amended, unless included in the term "labor to be performed for the county." Labor is "manual exertion of a toilsome nature." This is its meaning in statutes, unless plainly used in another sense. And. Law Dict. 591. When the section was originally adopted, and when it was amended, new counties were being organized; court

houses, jails and other county buildings were being erected; the counties were needing and employing manual labor. They need and employ that kind of labor at all times. The amendment merely made the original section include such labor. We find nothing in the statute demanding or even suggesting, that a more extended meaning should be given the word than is ordinarily attached to it. Had the legislature intended to include the printing of legal notices—in itself an item of considerable expense and importance—it would certainly have made use of more definite and appropriate language than is employed in this amendment. The correctness of this conclusion is confirmed by a consideration of the act of 1891, above quoted, wherein it is expressly declared to be the duty of the treasurer to give the notice by publication in a newspaper in his county, if there be one. If it was understood that the publication was to be in a paper selected by the county board, or in the paper whose publisher should make the lowest bid for the printing, certainly the legislature would have so provided; and, if such was the intention of the lawmakers, they would not have used the concluding clause of the section, which is entirely inconsistent with the contention that the price to be paid shall be fixed by the commissioners. Construing both acts together, as it is our duty to do, we think that upon the treasurer, and not the board, is imposed the duty of designating the paper in which to publish the tax sale notice. The authorities cited by counsel for appellant from California and Kansas are not applicable, because the statutes in those states are entirely different from the statutes in this state. The judgment of the circuit court is affirmed.