## NORTHERN PACIFIC RAILWAY CO., APPELLANT, v. SANDERS COUNTY, RESPONDENT.

### (No. 5,052.)

(Submitted. March 9, 1923.   Decided March 29, 1923.)

[214 Pac. 596.]

*Taxation — Classification of Property — Railroad Ties—"Supplies"—Statutes and Statutory Construction—Rules.*

Statutes and Statutory Construction—Meaning of Terms—How Determined.
  1.   The meaning of a given term employed in a statute must be measured and controlled by the connection in which it is employed, the evident purpose of the statute, and the subject to which it relates.

Same—Meaning of Words—Rules of Grammar—Presumptions.
  2.   In the construction of a statute it must be presumed that the legislators knew the meaning of words and the rules of grammar.

Same—Meaning of Words—How to be Understood.
  3.   Where a term used in a statute is not of a technical nature nor one which has acquired a peculiar meaning in the law, and it is not defined in the Codes, it must be understood in its ordinary sense and with the meaning commonly attributed to it.

Taxation—Railroad Ties Taxable as "Supplies."

    4. In an action to recover taxes paid under protest, *held*, under the above rules, that the term "supplies" used in section 1999, Revised Codes of 1921, in declaring that machinery, fixtures and "supplies" shall fall under class 4 of the property designated therein for taxation purposes, was employed in its ordinary sense, and that railroad ties kept on hand for replacement or new construction fall fairly within its meaning, and were therefore unlawfully assessed under class 7 of the section, comprising all property not included in the six preceding classes, and taxable at a higher rate than that enumerated in class 4.

Same—Classification of Property—Rule.

    5. Classification of property for taxation purposes must be based upon substantial distinctions which make one class really different from another.

*Appeal from District Court, Sanders County; James M. Self, Judge.*

ACTION by the Northern Pacific Railway Company against Sanders County, to recover taxes paid under protest. Judgment for defendant on demurrer to the complaint and plaintiff appeals. Reversed and remanded with directions to overrule the demurrer.

*Mr. Milton C. Gunn,* and *Messrs. Gunn, Rasch & Hall,* for Appellant, submitted an original and a supplemental brief; *Mr. Milton C. Gunn* argued the cause orally.

*Mr. Wellington D. Rankin,* Attorney General, and *Mr. A. A. Alvord,* County Attorney of Sanders County, submitted a brief; *Mr. Frank Woody,* Assistant Attorney General, argued the cause orally.

MR. JUSTICE HOLLOWAY delivered the opinion of the court.

On the first Monday of March, 1920, the Northern Pacific Railway Company had approximately 700,000 railroad ties in Sanders county. These ties were listed with, and a valuation placed thereon, by the county assessor. The county clerk computed the taxes upon forty per cent of the assessed value, and these taxes, extended on the assessment-roll, were de-

manded by the county treasurer. The railway company, contending that the basis of computation should be thirty per cent of the assessed value, paid the taxes upon the difference under protest and brought this action to recover the alleged excess. A general demurrer to the complaint was sustained, and the railway company, electing to stand upon its pleading, suffered judgment to be entered against it and appealed.

It is conceded by both parties that, under our classification statute (Chapter 51, Laws of 1919; secs. 1999 and 2000, Rev. Codes of 1921), these ties fall into class 4 or class 7, and the only question for determination is this: To which of the two classes mentioned should they be assigned?

Section 1999 makes a complete classification of all nonexempt property in the state for the purpose of taxation. There are seven classes, and in very general terms the property is grouped as follows: Class 1 includes net proceeds of mines. Class 2 includes household goods, tools, implements, and machinery, vehicles, water craft, harness, saddlery and robes. Class 3 comprises livestock, poultry, agricultural products, merchandise in stock and fixtures and furniture used therewith. Class 4 includes "all land, town and city lots, with improvements, manufacturing and mining machinery, fixtures and supplies." Class 5 includes credits, public bonds and warrants, and moneys, except moneys employed in the banking business. Class 6 comprises shares of stock in national banks and moneyed capital employed in conducting banking business by state or private banks or individuals, and class 7 comprises "all property not included in the six preceding classes."

Section 2000 designates the percentage of the full value of the property in each class upon which the taxes shall be collected, and these percentages range from 100 per cent to seven per cent. Property in class 4 is subject to taxation upon thirty per cent of its true value, while property in class 7 is taxable upon forty per cent of its value.

Plaintiff's contention can be sustained only upon the theory that railroad ties held in store for replacement or new con-

struction are to be classed as "supplies," as that term is employed to designate property in class 4.

Defendant insists that the term "supplies" must be given a restricted meaning—one which excludes railroad ties—and, since there is not in the statute any other term used to designate a class of property to which these ties can be assigned, they must fall in class 7.

Counsel, in their briefs, cite cases which they insist support their respective contentions, and to these cases a brief reference will be made. In *Trimble* v. *Durham,* 70 Miss. 295, 12 South. 207, it was held that mules are included in the term "supplies"; but in *Hankinson* v. *Hankinson,* 61 S. C. 193, 30 S. E. 385, a contrary conclusion was reached. In *Schaghticoke Powder Co.* v. *G. & J. Ry. Co.,* 183 N. Y. 306, 111 Am. St. Rep. 751, 5 Ann. Cas. 443, 2 L. R. A. (n. s.) 288, 76 N. E. 153, it was held that blasting powder is comprehended in the term "materials"; but in *Carson* v. *Shelton,* 128 Ky. 248, 15 L. R. A. (n. s.) 509, 107 S. W. 793, blasting powder was held to be included in the term "supplies." In *United States Rubber Co.* v. *Washington Engineering Co.,* 86 Wash. 180, L. R. A. 1915F, 951, 149 Pac. 706, the court distinguished between materials and supplies, holding that materials include such articles only as enter into and form a part of the finished structure, while supplies include articles necessarily consumed in their use. In *Johnson* v. *Steamboat Sandusky,* 5 Wend. (N. Y.) 510, Justice Sutherland for the court said: "The supplies contemplated by the Act, it appears to me, must be such as enter into the construction or equipment of a vessel and become a part of her, and not such articles as are daily consumed and constantly replaced."

In *Holter Hardware Co.* v. *Ontario Mining Co.,* 24 Mont. 198, 61 Pac. 8, it was held that oil used for illuminating a mine or mill is not comprehended in the term "materials," while in *Grants Pass T. Co.* v. *Enterprise Mining Co.,* 58 Or. 174, 34 L. R. A. (n. s.) 395, 113 Pac. 859, it was held that

electricity for lighting a mine is included in the term "supplies."

These cases suffice to illustrate the point. At first blush [1] the decisions appear to be irreconcilable, but they are not; indeed, there is not any inconsistency in them. In each instance the court was dealing with the peculiar phraseology of the statute under review, and the choice and collocation of the words employed led to the particular conclusion reached. The cases serve a useful purpose, in that they lead inevitably to the conclusion which has been crystallized into a fundamental rule of statutory construction that the meaning of a given term employed in a statute must be measured and controlled by the connection in which it is employed, the evident purpose of the statute, and the subject to which it relates. (*Dewell* v. *Board of Commissioners*, 8 S. D. 452, 66 N. W. 1079.)

In 2 Lewis' Sutherland on Statutory Construction, p. 729, it is said: "In construction words may be restricted or enlarged according to the intent with which they were used and their meaning as used may be gathered from the purpose of the enactment." When we consider the purpose of our classification statute, the meaning of the term "supplies," as applied to property in class 4 is not difficult to determine. The primary purpose was to group all taxable property in seven classes. Manifestly it was impossible for the legislature to enumerate everything that was the subject of taxation at the time the statute was enacted, and even if such a task could have been overcome, the statute would have been rendered largely nugatory as in the development of the state new subjects of taxation come into existence. It became necessary, therefore, in order to comprehend all taxable property in seven classes, for the legislature to employ such general terms as would bring all property within them without reference to particular name or specific description, and that this was done is beyond controversy. For example, class 2 includes "all household goods and furniture" and "all personal property actually used by the owner

for personal and domestic purposes." Class 3 includes "livestock, poultry, and all agricultural products" and "stocks of merchandise of all sorts." These examples serve to illustrate the generality of the terms employed.

So likewise in class 4 are included "all land, town and city lots, with improvements." The expression is tautological, but it may be true that the legislature had a definite purpose in thus employing it; in any event it indicates clearly that, in order to group all taxable property in seven classes, the terms employed must be subject to broad and generous construction. The legislature declared that class 4 should also include manufacturing and mining machinery, and it would be difficult to conceive of much more comprehensive terms. Having included these two groups by the language above, the legislature added "fixtures and supplies" to designate other property of the same general taxable value.

It is argued by counsel for defendant that the term "supplies" is to be confined in its meaning to supplies used in connection with land or manufacturing or mining machinery—the groups which precede it in the same class—but there is not any warrant for such a conclusion. As well might counsel contend that "agricultural products," used to designate property in class 3, mean agricultural products used in connection with livestock, for the terms occupy the same relative position in the respective subdivisions of the section. It has been said [2, 3] that legislators are presumed to know the meaning of words and the rules of grammar (*United States* v. *Goldenberg,* 168 U. S. 97, 42 L. Ed. 394, 18 Sup. Ct. Rep. 3 [see, also, Rose's U. S. Notes], and, indulging that presumption in this instance, the contention advanced is not admissible. Class 4 comprises three distinct groups of property: (1) land, city, and town lots with improvements; (2) manufacturing and mining machinery; and (3) fixtures and supplies. We must presume that the members of the legislature understood the meaning of the term "supplies," and, since it is not a technical term nor one which has acquired a peculiar meaning in the law,

and is not defined by our Codes, it must be understood in its ordinary sense and with the meaning commonly attributed to it.   (Sec. 15, Rev. Codes 1921.)

In *Osterholm* v. *Boston & Montana C. C. & S. Min. Co.,* 40 Mont. 508, 107 Pac. 499, this court said: "It is not allowable to interpret what has no need of interpretation, or, when the words have a definite and precise meaning, to go elsewhere in search of conjecture in order to restrict or extend their meaning. Statutes should be read and understood according to the natural and most obvious import of the language, without resorting to subtle and forced construction for the purpose of either limiting or extending their operation.   *   *   *   A primary rule of construction is that the legislature must be assumed to have meant precisely what the words of the law, as commonly understood, import; and this may be said to be the fundamental and controlling rule of construction."

Applying this rule and having recourse to the dictionaries, [4] we find that the term "supplies" (generally defined in the singular), is defined as follows: "That which is or can be supplied; available aggregate of things needed or demanded in amount sufficient for a given use or purpose; store; accumulated stores reserved for distribution." (New Standard Dictionary.) "That which is supplied; means of provision or relief; sufficiency for use or need; a quantity of something supplied or on hand; a stock; a store; necessaries collected and held for distribution and use; stores." (Century Dictionary.) "That which supplies a want; sufficiency of things for use or want; stores; chiefly in the plural, as lack of supplies." (Webster's New International Dictionary.) "Means of provision or relief; stores." (Bouvier's Law Dictionary.)

By section 285, Revised Codes of 1921, the state purchasing agent is authorized to contract for and purchase "all supplies of whatever nature necessary for the proper transaction of the business of each and every state department, commission, board, institution, or official." No one would have the temer-

ity to say that the term "supplies" as therein employed refers only to articles necessarily consumed in use and constantly to be replaced. The term is used in its ordinary sense and with the meaning commonly attached to it and we are satisfied that it was so used in section 1999 above. There cannot be a doubt that railroad ties kept on hand for replacement or new construction fall fairly within the meaning of the term "supplies" as indicated above.

As persuasive argument in favor of their position, counsel for defendant, in presenting this case, directed our attention to the language found in the report of the Tax and License Commission which recommended the enactment of Chapter 51 above. To that report was attached a draft of the proposed statute, and in explanation of the provisions, the commissioners said, among other things: "Class 7 * * * includes * * * all stocks, franchises and property of railroads." While it is true that, in construing a statute, this court must ascertain, if possible, the intention of the legislature in enacting it, we are not required to search for the intention of every champion of a measure before the legislative assembly. However great respect we may have for the composite opinion of the commissioners who made the report above, we cannot adopt their construction of the Act. It would destroy the Act itself. For example: Picks, shovels, pinch bars and wheelbarrows in private ownership, otherwise than as a part of a stock of merchandise, are clearly "tools" within the meaning of that term as used in the statute, and fall in class 2, and are subject to taxation upon twenty per cent of their assessed value. This much would be conceded if the tools belong to a farmer or contractor; but according to counsel's contention precisely the same kind and character of tools would be grouped in class 7 and made subject to taxation upon forty per cent of their assessed value if they belong to a railway company. Such an arbitrary classification would render the statute invalid.

[5] Classification must be based upon substantial distinctions

which make one class really different from another. (*North-western Life Ins. Co.* v. *Wisconsin,* 247 U. S. 132, 62 L. Ed. 1025, 38 Sup. Ct. Rep. 444.)

The judgment is reversed, and the cause is remanded, with directions to overrule the demurrer to the complaint.

*Reversed and remanded.*

Mr. Chief Justice Callaway and Associate Justices Cooper, Galen and Stark concur.

Rehearing denied April 26, 1923.