STATE, Respondent, *v.* NORTH AMERICAN CAR CORPORATION, Appellant.

No. 8541

Submitted October 25, 1945. Decided December 11, 1945.

164 Pac. (2d) 161

Mr. Leon S. Hirsh, of Chicago, Ill., and Mr. Edmond G. Toomey, Mr. Edgar M. Hall, and Toomey, McFarland & Hall, all of Helena, for appellant.

Mr. R. V. Bottomly, Atty. Gen., and Mr. I. W. Choate and Mr. H. O. Vralsted, Tax Counsel for State Board of Equalization, all of Helena, for respondent.

MR. JUSTICE MORRIS delivered the opinion of the court.

This is an appeal from a judgment of the district court in and for the First Judicial District sustaining the State Board of Equalization in assessing and levying taxes against defendant's fleet of freight line cars employed in transportation by various common-carrier lessees engaged in interstate commerce, such cars being used to transport freight into, out of and through the state of Montana. The power to impose the tax is predicated upon Chapter 190 of the Political Code.

The State Board of Equalization, hereinafter referred to as the State Board, filed its complaint March 21, 1940, setting up five separate causes of action. The first cause is grounded upon the allegation of taxes being due for the years 1930 to 1935 inclusive. The other four causes of action are for the four subsequent years, each cause of action relating to the taxes alleged to be due for the particular year. A demurrer to the complaint was overruled. The answer was in the nature of a general denial supported by certain affirmative defenses.

The case was tried on an agreed statement of facts which the trial court adopted in toto, and which was made the basis of its findings. Judgment was given for the state for the full amount demanded and the defendant appealed.

The several specifications of error assigned were grouped by appellant for argument under the following heads:

"(a) That the method of fixing the values and rate of taxation on said properties is unjust, arbitrary and discriminatory;

"(b) That said provisions violate the equality and uniformity provisions of the state and federal constitutions;

"(c) That the rate of taxation is violative of limitations of the Constitution of the State of Montana."

We recite here such of the agreed statements of fact, in substance or in full, as we deem essential to our determination of the controversy, giving to those mentioned the same Roman numerals under which they appear in the transcript, as follows:

IV. The defendant is the owner of certain railroad cars consisting of refrigerator, poultry, and tank cars leased to and used by common carriers in the transportation of commodities. The defendant is not engaged in the transportation of comcodities in the state of Montana or elsewhere. Defendant's cars are moved into, over and through the state of Montana but none of the cars are permanently located in this state or in any taxing district thereof. The cars are chiefly used in interstate commerce and only a small percentage of such use is intrastate.

V. The several common-carrier railroad companies operating in Montana own and operate freight cars of the same kind and nature as the freight cars owned by the defendant and there is no difference in the nature, kind, basic classification and utilization of the cars owned by the defendant and those owned by such common-carrier railroad companies.

VI. Defendant has never paid any tax upon its cars to the state of Montana but admits that the provisions of section 2103.2, Revised Codes, directs the State Board to assess the cars of said corporation and to levy a tax thereon.

VII. In September 1936 the State Board, pursuant to sections 2097 to 2110, Revised Codes, determined the full and true value of defendant's freight line cars which were habitually em-

ployed within the state of Montana for the years 1930 to 1935 inclusive and did assess such cars to the defendant.

VIII. In determining the value of defendant's cars, the State Board followed the method provided by the sections of the statute mentioned in the preceding paragraph. The defendant not having reported to the State Board the use of its cars in Montana for the period mentioned, as required by section 2009, the State Board, in fixing such valuation for assessment purposes, had informed itself as best it could on matters necessary to determine the true and full value of defendant's cars.

VIII-A. This agreed statement of fact, being of particular importance in this controversy, is set out in full:

"That the said Board construed and interprets Section 2103, Revised Codes of Montana, 1935, to require it to determine and fix a rate of levy against the property of defendant corporation as to equal as nearly as may be the average of all rates of levy imposed upon all property within the State of Montana during each year. So the said Board, for each of the years involved herein, ascertained the total amount of all ad valorem taxes levied in the State of Montana and in all of the minor taxing districts, counties, cities, towns and school districts therein, and then divided said total sum of all such levied ad valorem taxes by the total taxable value of all the property in the State of Montana." [This statement of fact being based upon section 2103, Revised Codes, that section, for convenient comparison, is recited here: "It shall be the duty of the state board of equalization and it is authorized each year, to determine the rate of tax levy against the property of such companies which shall be equal, as nearly as may be, to the average rate of all general taxes, state, county, municipal, school and local, levied throughout the several taxing districts of the state for the preceding year and the average rate as so determined is hereby levied against the property of such companies.

"The state board of equalization shall, on or before the first day of June in each year, mail to each freight line company a statement showing the total assessed value and the taxable value

of the property of such company for such year, as ascertained and determined by the state board of equalization, together with the amount of the tax determined by the state board of equalization, and such freight line company may, at any time before the third Monday in June, file with said state board of equalization a protest, in writing, against such determination or assessment, or both, and the state board of equalization may, on the filing of such protest, or on its own motion, review and correct its findings in such manner as it may deem to be just and proper; provided, however, that no action of any kind shall be instituted or maintained by any freight line company to enjoin the sale of any property seized by the state treasurer on account of the non-payment of any such tax, or to recover. any tax, or any portion thereof, paid under protest, unless such freight line company shall have filed with said board a protest, in writing, in the manner and form and within the time provided .in this section''].

IX. On the first of June, 1936, pursuant to the provisions of section 2103 as construed by the State Board, an order was made determining the tax rate against defendant's cars for the years 1930 to 1933, inclusive, to be 64.188 mills, for the year 1934 to be· 70.5 mills, for the year 1935 to be 71.347 mills, the amounts fixed being determined pursuant to paragraph VIII-A, supra.

X. In September 1936, the State Board computed the tax against defendant's freight line cars for the years 1930 to 1935, inclusive, according to the orders theretofore given fixing the tax levy and determined that the amount due was $2,704.96.

XI. The defendant was duly advised of the assessment, the levy and the amount due and was further advised that such amount, if not paid, would become delinquent November 30, 1936.

XII. The orders referred to above were given and made after hearing on a protest filed by the defendant with the State Board and its due consideration. The Board thereupon certified to the

state treasurer the necessary information including the amount of said tax.

XIV. This agreed statement of fact is also of particular importance in this controversy and is here set out in full:

"That during all the years involved in this action, the taxing authorities of the State of Montana did not assess any taxable value upon nor levy any tax rate against the railroad freight cars owned by common-carrier railroads not operating within the State of Montana but which were furnished by such carriers, for compensation, to common-carrier railroads operating within the State, although such cars were of similar nature, kind, classification, and utilization as those owned by the defendant herein."

XV. At all times involved in this action the State Board assessed all railroads operating in more than one county of the state of Montana, including in such assessment the franchise, roadway, roadbed, rails and rolling stock of such railroad companies, and including also their freight cars of the nature, kind, basic classification and use identical with those owned by the defendant, and apportioned such assessment to the several counties, school districts, cities, towns and other taxing subdivisions in which such railroads were located in a manner provided by sections 2131 to 2137, Revised Codes, and Chapter 13 of the 1939 Session Laws amendatory thereof, and the amount apportioned to each taxing subdivision thereof.

XVI. Such proportional assessment of the property of the railroads mentioned in the preceding section was taken as a basis for the tax rates fixed and taxes levied by the taxing authorities of each said tax district; and the taxes levied for each year involved in this action were as follows:

1930: 4.333 mills:
    Made up of state general fund.................................. 3.50
    Educational bonds.................................................. .8333

1931: 5.333 mills:
    Made up of state general fund levy........................... 2.

University fund........................................................ 2.5
Educational bonds.................................................. .8333
1932: 5.333 mills:
    Made up of same levies as above stated for 1931
1933: 5.333 mills:
    Made up of state general fund levy.......................... 1.050
    Funding bond sinking & Interest fund.................... .450
    University fund........................................................ 3.000
    Educational bonds.................................................. .833
1934: 7.146 mills:
    Made up of general fund levy................................... 1.500
    University fund........................................................ 3.00
    Educational bonds on basis of taxable value........... 2.646
1935: 7.143 mills:
    Made up of general fund levy................................... 2.00
    University millage fund............................................ 2.50
    Educational bonds on basis of taxable value........... 2.643
1936: 7.120 mills:
    Made up of general fund levy................................... 1.75
    University fund........................................................ 2.75
    Educational bonds on basis of taxable value........... 2.62
1937: 7.117 mills:
    Made up of general fund levy................................... 1.75
    University fund........................................................ 2.5
    Educational bonds on basis of taxable value........... 2.617
1938: 5.540 mills:
    Made up of general fund levy................................... 2.00
    University fund........................................................ 2.5
    Educational bonds on basis of taxable value........... 1.040
1939: 5.5    mills:
    Made up of general fund levy................................... 2.00
    University fund........................................................ 3.00
    Capitol bldg. refunding bonds.................................. .5

"Said tax rates were also fixed only with reference to the tax rates of the several taxing districts in which said property, including freight cars, was physically present, and said rates

were fixed without considering the average tax rates levied by all the taxing subdivisions in the State, * * *."

XVII. There are a large number of taxing subdivisions in the state in a great many of which no railroad equipment is utilized or is physically present. During the years involved in this action, defendant's cars were actually located outside incorporated cities and towns more of the time than they were within the same. Defendant's cars were not taxed in proportion to the amount of and actual physical presence and use within the several taxing districts of the state. In computing the tax rate to be levied against defendant's property, the same was arrived at solely in the manner specified in paragraph VIII-A hereof. During the years defendant's freight line cars were taxed, freight cars owned by others than freight line companies were taxed in the manner provided by sections 2131 to 2137, Revised Codes, and acts amendatory thereof, which resulted in the freight cars owned by others than freight line companies being taxed in such manner that only that portion of the value of such other cars was taxed in each taxing subdivision of the state, at tax rates prevailing therein, as was determined by computing the ratio of the railroad track mileage and value in such taxing subdivisions as compared with the total railroad track mileage and value in the state in which said cars were utilized and were present. During all the years that assessments were made and taxes levied against the cars of the freight line company, taxes were levied for the purposes of all funds of the state including the common school income and interest fund at the rates of levy set forth in paragraph XVI, supra. The taxes levied against the defendant for the years 1930 through 1939, inclusive, were levied only for credit to the state public school general fund in the following manner:

| 1930, | 64.188 mills; | 1931, | 64.188 mills; |
| 1932, | 64.188 mills; | 1933, | 64.188 mills; |
| 1934, | 70.50 mills; | 1935, | 71.347 mills; |
| 1936, | 71.347 mills; | 1937, | 69.93 mills; |
| 1938, | 74.15 mills; | 1939, | 72.115 mills." |

XIX. Defendant has repeatedly offered to pay and is ready, willing and able to pay to the state "what it regards as a reasonable, non-arbitrary, and non-discriminatory tax upon its freight cars habitually used within the State of Montana."

We deem it unnecessary to give any other of the agreed statement of facts. In this connection this Court said in the case of McCarthy v. Employers' Fire Ins. Co., 97 Mont. 540, 553, 37 Pac. (2d) 579, 582, 97 A. L. R. 292: "When a case is tried 'and submitted' on an agreed statement of facts, the statement becomes the court's findings of fact and has the effect of a special verdict, and judgment must be pronounced thereon, and, in doing so, the court is bound by the stipulation. Section 9372, Rev. Codes 1921; Conklin v. Cullen, 25 Mont. 214, 64 Pac. 502; Jenkins v. Newman, 39 Mont. 77, 101 Pac. 625; Yellowstone County v. First Trust & Sav. Bank, 46 Mont. 439, 128 Pac. 596; Read v. Lewis and Clark County, 55 Mont. 412, 178 Pac. 177; Lewis v. Lambros, 58 Mont. 555, 194 Pac. 152. But, to sustain a judgment for plaintiff on an agreed statement of facts, the statement must show all the facts necessary to a recovery (Billings Hardware Co. v. Bryan, 63 Mont. 14, 206 Pac. 418), and must contain ultimate facts presenting only questions of law, and not circumstances which may tend to prove ultimate facts. Longmeyer v. Lawrence, 50 Okl. 457, 150 Pac. 905; Wilson v. Merchants' Loan & T. Co., 183 U. S. 121, 22 S. Ct. 55, 45 L. Ed. 113. If, in the judgment of the trial court, the statement is not sufficient to enable the court to render judgment, the court may set aside the agreement and remand the cause for further proceedings. Powers v. Provident Institute, 122 Mass. 443; Ford v. Buchanan, 111 Pa. 31, 2 A. 339; Jones v. Integrity Trust Co., 292 Pa. 149, 140 A. 862; Carr v. Lewis Coal Co., 96 Mo. 149, 8 S. W. 907, 9 Am. St. Rep. 328; Field v. Chicago, etc., Ry. Co., 21 Mo. App. 600; 1 R. C. L. 780; State Ins. Co. v. Farmers' Mutual Ins. Co., 65 Neb. 34, 90 N. W. 997." We are, therefore, concerned here with questions of law only.

Adverting to defendant's contentions (a), (b) and (c), if either of such contentions be established the defendant shall be

entitled to judgment. Taking up contention (a), if the mode for "fixing values and rate of taxation" set up by section 2103, Revised Codes, be discriminatory, it will logically follow that the values fixed for defendant's cars and the rate imposed are "unjust and arbitrary." We, therefore, need to determine only the question as to whether such mode be discriminatory or not.

"Discrimination" is defined by Black's Law Dictionary as: "In constitutional law, the effect of a statute which confers particular privileges on a class arbitrarily selected from a large number of persons, all of whom stand in the same relation to the privileges granted and between whom those not favored no reasonable distinction can be found." This definition was obviously predicated upon the case of Franchise Motor Freight Ass'n v. Seavey, 196 Cal. 77, 235 Pac. 1000. See also Connolly v. Union Sewer Pipe Co., 184 U. S. 540, 22 S. Ct. 431, 46 L. Ed. 679.

Sections I and II of Article XII of the Constitution of Montana respectively provide:

"I. The necessary revenue for the support and maintenance of the state shall be provided by the legislative assembly, which shall levy a uniform rate of assessment and taxation, and shall prescribe such regulations as shall secure a just valuation for taxation of all property, except that specially provided for in this article."

"II. Taxes shall be levied and collected by general laws and for public purposes only. They shall be uniform upon the same class of subjects within the territorial limits of the authority levying the tax."

This court in interpreting these two provisions of the Constitution said, in the case of Hilger v. Moore, 56 Mont. 146, 170, 182 Pac. 477, 481: "Construing the first sentence of section I with section II the meaning is reasonably clear: The taxes levied shall be uniform upon the same class of property within the same taxing district. The entire state is one district for the purpose of raising state taxes. Every county is a separate district for county taxes, every city for city taxes, etc. Or, stating

the principle of sections I and II in different form, the mandatory injunction to the Legislature is that it shall prescribe such uniform mode of assessment as shall secure a just valuation of all taxable property, that all taxes shall be levied and collected by general laws and for public purposes only, and that they shall be uniform upon the same class of property within the territorial limits of the authority levying the tax. This is the rule of uniformity declared by our Constitution, if we are able to determine the intention of its framers aright.''

We think it will be admitted that any tax against the same ▮ kind of property used for identical purposes is not uniform when a different valuation and a different rate is applied to two distinct taxpayers, separately distinguishable only in name, and the tax being imposed by the same taxing district. We further believe it will be admitted that such disregard of the uniform clause of sections I and II of Article XII, supra, constitutes clear discrimination.

In the case of State ex rel. Northern Pacific R. Co. v. Duncan, 68 Mont. 420, 219 Pac. 638, 639, the railway company complained of discrimination by the county taxing officials where improvements on railroad land had been classified for taxation purposes in a class taking a higher rate under section 2000, Revised Codes, than like improvement of other taxpayers similarly situated. The court granted the writ asked for and in the course of its opinion said:

''It is asserted that the improvements mentioned in class 4 of section 1999 apply only to those upon land, town, and city lots, and, as the improvements in question are not upon town or city lots, and not upon land because within a roadway, therefore the improvements in question do not come within class 4, and so inevitably must come within class 7. * * *

''If respondent's contention were correct we should have different valuations for the same kind of property. If a merchant owned a warehouse upon a tract of land adjoining the railroad right of way, the warehouse would be in class 4, and taxed upon the 30 per cent. basis. An adjoining and precisely

similar warehouse owned by the railroad upon its right of way would be within class 7, and be taxed upon the 40 per cent. basis. * * * By such construction we should have two classes of improvements precisely similar, without anything to distinguish one class from another, except that the property in one class belonged to a railroad and the other to an individual.

" 'Classification must be based upon substantial distinctions which make one class really different from another. Northwestern Mut. Life Ins. Co. v. Wisconsin, 247 U. S. 132, 38 S. Ct. 444, 62 L. Ed. 1025.' Northern Pac. R. Co. v. Sanders County, 66 Mont. 608, 214 P. 596.

"A classification such as respondent contends for would be arbitrary, discriminatory, and unfair, and therefore would be unconstitutional. Hilger v. Moore, 56 Mont. 146, 182 Pac. 477." See also State v. Sunburst Refining Co., 73 Mont. 68, 235 Pac. 428; Hayes v. Smith, 58 Mont. 306, 192 Pac. 615; Fruit Growers Express Co. v. Britt, 94 Mont. 281, 22 Pac. (2d) 171; Hauser v. Miller, 37 Mont. 22, 94 Pac. 197; Northern Pacific R. Co. v. Sanders County, 66 Mont. 608, 214 Pac. 596.

After reviewing these authorities on discrimination we think ▮ that if any doubt remains about the defendant's having been discriminated against in the fixing of the value of its cars and also in determining the rate of taxation, such doubt will be removed by comparing statements of fact XIV, XV, XVI and XVII. It is our opinion that the discrimination against the defendant is clearly apparent and that such discrimination conflicts with sections I and II of the Constitution of Montana, and also with the Due Process and Equal Protection Clauses of the Constitution of the United States, the 5th and 14th amendments, respectively, and the assessment and levy are therefore void. They are further void as in violation of section 9 of Article XII, Constitution of Montana. That section of the Constitution provides that, except for a special levy upon livestock for wild animal bounty and stock inspection purposes, the rate of taxation on real and personal property for state purposes shall never exceed 2 mills on each dollar of valuation

unless the increase is authorized by the people at a general election. Certain additional levies have been so authorized as a result of which during the years 1930 to 1939, inclusive, the total state levies on real and personal property (with the exception of that in question here) for all state purposes varied between a low of 4.333 mills and a high of 7.146 mills. During the same years the state levy upon the property in question varied between a low of 64.188 mills and a high of 74.15 mills. It must be obvious that those levies far exceed the levies authorized by the people.

It is no answer to say that by the statutes in question the ▇ legislature has released this property from taxes for county, municipal and other purposes, for the legislature has no such power. Section 7 of Article XII of the state Constitution provides: ''The power to tax corporations or corporate property shall never be relinquished or suspended, and all corporations in this state, or doing business therein, shall be subject to taxation for state, county, school, municipal and other purposes, on real and personal property owned or used by them and not by this constitution exempted from taxation.'' Nor is it an answer to say that by this provision the legislature has not released the property from such taxes but has merely substituted its own levy for the local ones, for section 4 of Article XII provides: ''The legislative assembly shall not levy taxes upon the inhabitants or property in any county, city, town, or municipal corporation for county, town, or municipal purposes, but it may by law invest in the corporate authorities thereof powers to assess and collect taxes for such purposes.''

Neither can it be contended that this tax, all of which goes ▇ into the state common school income and interest fund, does not violate the limitation, by section 9 of Article XII, of levies for state purposes. Section 1 of Article XI makes the establishment and maintenance of ''a general, uniform and thorough system of public, free, common schools'' a state duty and therefore a state purpose. The parties agree that the common school income and interest fund, which is used for that

purpose, is a state fund and such agreement is in accord with law. Section 2106, Revised Codes. That section directs the state treasurer to collect the tax and a state treasurer has nothing to do with collecting any tax other than such as relate to state funds. See also sections 13 and 14 of Article XII; section 198.1 and 198.6, Revised Codes; State ex rel. Journal Pub. Co. v. Kenney, 10 Mont. 488, 492, 26 Pac. 383; State of Ohio ex rel. Treasurer of Athens County v. Auditor of State, 15 Ohio St. 482; Du Bois v. Baker, 52 Ohio App. 148, 3 N. E. (2d) 552, 555; United New Jersey R. & Canal Co. v. Baird, 75 N. J. L. 788, 69 A. 472; City of Astoria v. Kozer, 124 Or. 261, 264 Pac. 445; Eugene School Dist. v. Fisk, 159 Or. 245, 79 Pac. (2d) 262.

There are other questions that have some bearing upon this controversy but we deem their determination unnecessary in this case. They would become important in any attack upon the validity of Chapter 190, supra, as a whole. The right of the legislature to enact retroactive legislation in tax matters is a question about which, among others, determination at this time is reserved.

The judgment is reversed and the cause remanded with instructions to sustain the demurrer to the complaint.

Mr. Chief Justice Johnson and Associate Justice Cheadle concur.

Mr. Justice Angstman (dissenting).

I dissent. This action was brought to recover taxes imposed by the State Board of Equalization under sections 2097 to 2110, Revised Codes, against defendant, a freight line company for the years 1931 to 1939, inclusive.

The essential facts are these: Defendant, during the years in question owned certain freight cars which it rented to common-carrier railroads at a specified rental fixed by the Interstate Commerce Commission. Defendant is not a carrier and does not engage in the transportation of commodities. The lessees use the cars chiefly for interstate traffic in, out of, and through the state of Montana, with but a small part of the use being devoted strictly to intrastate business.

During the period here involved there were common-carrier railroad companies doing business in Montana, and who owned and operated freight cars of the same kind as those owned by defendant. Likewise, during the same period, there were railway companies who did not operate in Montana, but who furnished freight cars to railroad companies who were operating in Montana of the same kind and used for the same purposes as the cars owned by defendant. Defendant has not paid any taxes during the time involved in the action.

The State Board of Equalization assessed the cars owned by defendant and habitually operated in the state of Montana at their full and true value and determined the rate of tax levy as provided in sections 2097-2110, Revised Codes. The rate of the levy was fixed under section 2103 so as to equal as nearly as possible the average of all rates upon all property in the state during each year. As thus computed the rates varied from year to year between the extremes of 64 and a fraction mills to 71 and a fraction mills. During these years the state did not assess any taxes against similar freight cars owned by common-carrier railroad companies not operating in Montana, and which they furnished to railroads operating in Montana. Railroads operating in Montana were assessed during the years in question as provided by sections 2131 to 2137, inclusive, as amended by Chapter 13, Laws of 1939, on their freight cars which were of the same kind as those of defendant and the assessment apportioned to the several counties, cities, towns, school districts and other taxing subdivisions as therein provided.

The tax rates, as against railroads operating in more than one county, were fixed and levied by the local authorities. Some of such taxes were for local needs and some for state purposes. The rate for state purposes ranged from four and a fraction to seven and a fraction mills. These rates were not based upon the average rates prevailing throughout the state as in the case of the levy against defendant.

It was agreed that in a large number of taxing subdivisions in the state there are no railroads and no freight cars; that the

value of property in incorporated cities and towns is higher in respect to the area thereof than in outside territory, and that defendant's cars were located outside incorporated cities and towns more than within them, and that they were not taxed in proportion to their presence and use within the several taxing districts or on the basis of railroad mileage therein.

Freight cars owned by other than "freight line companies" were taxed as required under sections 2131 to 2133 so that only that portion of their value was taxed in each taxing subdivision of the state as represented the ratio between the railroad track mileage in each taxing subdivision and the total railroad track mileage in the state. The taxes levied against defendant for the years 1931 to 1934, inclusive were credited to the state common school income and interest fund, and for subsequent years to the state public school general fund.

The first point urged by defendant is that the statute, sections 2097 to 2110, Revised Codes, places the property of freight line companies in a distinct class for the purpose of taxation and that the statute is lacking in uniformity contrary to sections 1 and 11 of Article XII of our Constitution. It is competent for the legislature to classify property for the purpose of taxation. Hilger v. Moore, 56 Mont. 146, 182 Pac. 477. And while "classifications must be based upon substantial distinctions which make one class really different from another" (State ex rel. Northern Pac. Ry. Co. v. Duncan, 68 Mont. 420, 219 Pac. 638, 640), yet the test is, does the classification preclude the assumption that it was made in the exercise of legislative judgment and discretion. Bank of Miles City v. Custer County, 93 Mont. 291, 19 Pac. (2d) 885; Montana Beer Retailers' Protective Ass'n v. State Board, 95 Mont. 30, 25 Pac. (2d) 128. Two identical articles may be placed in different classes for tax purposes. Wheir v. Dye, 105 Mont. 347, 73 Pac. (2d) 209.

It is conceded that defendant corporation does not maintain an office or transact business in Montana otherwise than by leasing its cars to railroads operating in Montana. It thus employs no men in Montana, and spends no money in conducting

any business in Montana. Whatever revenue is derived from its business of leasing freight cars to railroads operating in Montana is diverted from the state. The defendant is, in these respects, different from the railroads operating in Montana and we cannot say that these differences are not sufficient to warrant the legislature in according different treatment in the matter of taxation. In other words these differences were sufficient to indicate that the legislature proceeded in the exercise of judgment and discretion and not arbitrarily and capriciously in prescribing a different method of taxation. We point out too that there is nothing in the record to indicate that the rate of taxation as against defendant's cars is substantially greater than that against similar cars of railroads, so far as the total tax liability for the cars is concerned. There is some difference in the sum total because defendant's cars are taxed on the average rate while railroad cars take the precise rate for each taxing district. How much difference that difference makes in the total tax liability the record does not reveal. It does not appear to me, however, that the different treatment of defendant's cars indicates such hostile discrimination as to compel a holding that it is prohibited by our Constitution. The fact that foreign railroad companies lease cars to carriers operating in Montana without paying a tax thereon is no justification for exempting defendant's property from taxation. Neither the statute nor the Constitution exempts from taxation the cars of foreign railroad companies leased to carriers operating in Montana.

There is no constitutional objection to the plan of applying the average rate of taxation of all property against a certain class of property. This plan has been upheld by the United States Supreme Court in Michigan Central R. Co. v. Powers, 201 U. S. 245, 26 S. Ct. 459, 50 L. Ed. 744. The Michigan constitutional provisions involved in that case were different from ours but the court reached the conclusion it did on the theory that the state may, if it chooses, treat its entire territory as one taxing unit. That is what the Montana legislature did as to freight cars owned by freight line companies by section 2098,

Revised Codes. I see no constitutional provision prohibiting the legislature from so doing. Other cases supporting this method of fixing the rate are the following: Pacific Fruit Growers Express Co. v. City of Yuma, 32 Ariz. 601, 261 Pac. 49; Wyatt v. State Board of Equalization, 74 N. H. 552, 70 A. 387. Defendant relies upon the cases of Pingree v. Auditor General, 120 Mich. 95, 78 N. W. 1025, 44 L. R. A. 679; Layman v. Iowa Tel. Co., 123 Iowa 591, 99 N. W. 205; and Ewert v. Taylor, 38 S. D. 124, 160 N. W. 797. These cases had to do with constitutional provisions commanding a uniform rule of taxation, and where classification such as was sustained in Hilger v. Moore, supra, would not be sustained. These features of the Ewert case were pointed out by the United States Supreme Court in Puget Sound Power & Light Co. v. King County, 264 U. S. 22, 44 S. Ct. 261, 68 L. Ed. 541. I think the majority opinion is in error in condemning the tax in question as unjustly discriminatory.

It is contended and the majority opinion holds that the classification violates the due process and equal protection clauses of the state and federal constitutions. " 'The equal protection clause does not require the state to maintain a rigid rule of equal taxation to resort to close distinctions, or to maintain a precise scientific uniformity; any possible differences in tax burdens not shown * * * to be arbitrary or capricious, do not fall within constitutional prohibitions.' Lawrence v. State Tax Commission of State of Mississippi, 286 U. S. 276, 52 S. Ct. 556, 559, 76 L. Ed. 1102 [87 A. L. R. 374]." Merchants Nat. Bank v. Dawson County, 93 Mont. 310, 19 Pac. (2d) 892, 898.

"It is enough that there is no discrimination in favor of one against another of the same class, and the method for the assessment * * * of the tax is not inconsistent with natural justice." Citizens Tel. Co. v. Fuller, 229 U. S. 322, 33 S. Ct. 833, 835, 57 L. Ed. 1206.

"Nothing in the 14th Amendment imposes any ironclad rule upon the states with respect to their internal taxation, or prevents them from imposing double taxation, or any other form of unequal taxation, so long as the inequality is not based upon

arbitrary distinctions." St. Louis S. W. R. Co. v. Arkansas, 235 U. S. 350, 35 S. Ct. 99, 104, 59 L. Ed. 265.

In New York Rapid Transit Co. v. City of New York, 303 U. S. 573, 58 S. Ct. 721, 724, 82 L. Ed. 1024, it was said:

"Indeed, it has long been the law under the Amendment that 'a distinction in legislation is not arbitrary, if any state of facts reasonably can be conceived that would sustain it.' Rast v. Van Deman & Lewis Co., 240 U. S. 342, 357, 36 S. Ct. 370, 374, 60 L. Ed. 679, L. R. A. 1917A, 421, Ann. Cas. 1917B, 455; Borden's [Farm Products] Co. v. Baldwin, 293 U. S. 194, 209, 55 S. Ct. 187, 191, 79 L. Ed. 281; Metropolitan Casualty Ins. Co. v. Brownell, 294 U. S. 580, 584, 55 S. Ct. 538, 540, 79 L. Ed. 1070; 'The rule of equality permits many practical inequalities.' Magoun v. Illinois Trust & Savings Bank, 170 U. S. 283, 296, 18 S. Ct. 594, 599, 42 L. Ed. 1037; Breedlove v. Suttles, 302 U. S. 277, 281, 58 S. Ct. 205, 82 L. Ed. 252; Carmichael v. Southern Coal & Coke Co., 301 U. S. 495, 509, 57 S. Ct. 868, 872, 81 L. Ed. 1245, 109 A. L. R. 1327. 'What satisfied this equality has not been, and probably never can be, precisely defined.' Magoun v. Illinois Trust & Savings Bank, supra, 170 U. S. 283, 293, 18 S. Ct. 594, 598, 42 L. Ed. 1037.

"The power to make distinctions exists with full vigor in the field of taxation, where no 'iron rule' of equality has ever been enforced upon the states. Bell's Gap R. Co. v. Pennsylvania, 134 U. S. 232, 237, 10 S. Ct. 533, 33 L. Ed. 892; Giozza v. Tiernan, 148 U. S. 657, 662, 13 S. Ct. 721, 37 L. Ed. 599."

In my opinion there is no merit in the contention that the statutes in question conflict with the due process and equal protection clauses of the state and federal constitutions.

It is my opinion that the majority are in error in holding that the levy on the freight cars conflicts with section 9 of Article XII of our Constitution which limits the rate of taxation for state purposes to $2\frac{1}{2}$ mills and when the taxable property amounts to $600,000,000 to 2 mills unless increases are authorized by a vote of the people.

It is conceded that no vote of the people authorized increases to the number of mills levied against defendant's property.

The fallacy of defendant's argument rests in the supposition that the rate of the tax levy is the state rate only. In fixing the rate of the tax levy the State Board is commanded by section 2103 to make it "equal, as nearly as may be, to the average rate of all general taxes, state, county, municipal, school and local, levied throughout the several taxing districts of the state for the preceding year." The rate is thus the average rate for all purposes, i.e., for state, county, municipal and school purposes. The State Board of Equalization is merely the agency that makes the calculation of this average rate. The rate in each local tax unit that is used to make up the average is imposed by the local taxing units and not by the State Board of Equalization. The average rate depends upon the action of the local taxing units and not upon anything done by the State Board of Equalization. The average represents not alone the state rate but the combination of the state, county, municipal and school district rates.

Defendant contends that it is improper to pay the proceeds of the tax into the school fund if the levy is for all purposes. A sufficient answer to this contention is that if that part of the law directing where the money goes is unconstitutional, it would not affect any right or interest of this defendant to the extent of relieving it of the duty to pay the tax. The remedy to test the validity of that part of the law would be by appropriate proceedings by one sufficiently interested to have the proceeds of the tax go elsewhere than where the law now directs.

Other contentions of defendant have not been considered in the majority opinion and will not therefore be discussed here.

I find no justification for disturbing the ruling of the trial court in upholding the statute and the tax, and in my opinion the judgment should be affirmed.

Mr. Justice Adair (dissenting).

The defendant, a foreign corporation and absent from this state nevertheless owns a large number of freight cars which are

habitually used in the transportation of commodities over the various railroads in the state of Montana. The personal property so used is subject to taxation by the state and the state's power to so tax is an essential attribute of sovereignty. The Constitution of Montana provides: "The power to tax corporations or corporate property shall never be relinquished or suspended, and all corporations in this state, or doing business therein, shall be subject to taxation for state, county, school, municipal and other purposes, on real and personal property owned or used by them and not by this constitution exempted from taxation." Const. Article XII, section 7. By no provision of the Constitution is the property of the defendant corporation "exempted from taxation," hence it must be and is subject to taxation.

In 51 Am. Jur., title "Taxation," the author says: "It is everywhere agreed that neither the Fourteenth Amendment to the Federal Constitution nor the equality and uniformity requirements of the state constitutions prohibit the making of classifications in state legislation relating to taxation. The power of a state to make reasonable and natural classifications for purposes of taxation, it has been said, is clear and not questioned. Such classifications may be made with respect to the subjects of taxation generally, the kinds of property to be taxed, the rates to be levied or the amounts to be raised, or the methods of assessment, valuation, and collection." Section 173, p. 230.

"Legislative classifications in tax matters are presumptively valid, the burden being on the challenger to prove that such a classification does not rest upon a reasonable basis, and will not be disturbed by the judiciary in the absence of unreasonable discriminatory, or arbitrary action." Section 174, p. 234.

"The rule requiring equality of taxation within the same class does not prevent subclassifications in taxing statutes, it having been asserted in this connection that the legislature is not bound to tax every member of a class or none, but may make distinctions of degree having a rational basis." Section 179, p. 240.

"It has been frequently recognized that for many purposes

and under most circumstances, railroad companies may be treated as a separate class in tax legislation. Such separate classification has been justified variously upon the grounds of the inherent nature and uses of railroad property, the dissimilarity in use and value of railroad property from the mass of other property and its continuous extent through different localities, the distinctive characteristics and functions of such concerns, and the many respects in which railroads differ from other properties. * * *

"The property of separate classification for tax purposes of other particular kinds of public utilities, such as express companies, gas companies, street railroads, and telephone, telegraph, palace car, sleeping car, dining car, and fast freight companies, is generally recognized." Section 201, pp. 260-262.

"The fact that property is used or employed in interstate or foreign commerce does not of itself render it immune or exempt from nondiscriminatory local taxation. * * * It is not the character of the property that makes it subject to such a tax, but the fact that the property has its situs within the state and that the owner should give appropriate support to the government which protects it." Section 206, pp. 267, 268.

"The power of a state to tax property used for the purposes of interstate commerce and having a situs within its limits is not confined to taxation of specific articles of property, but may be exercised in any fair and reasonable manner. * * * in taxing property employed in interstate or foreign commerce, where the amount or particular items are variable or shifting, the tax may be laid on the average amount used in the state." Section 212, pp. 273, 274.

The absentee corporation property owner who has thus far escaped the tax collector, and who, so far as this record shows, has never paid a cent of taxes to the state of Montana, has no cause to complain of any discrimination against it. The resident taxpayers of this state, however, from whom the state collects year after year and who thus give support to their government, are the ones who, in my judgment, have just cause to complain

of discrimination, for they as resident property owners pay while the non-resident absentee owner is rendered immune from taxation on the property which, habitually, it uses in the state and which therefore has a situs here for taxation purposes.

Whether the statute under consideration unconstitutionally discriminates is to be determined, not by the ostensible reach of its language but by its practical operation, and in the latter I find no such discrimination. I concur in the foregoing dissent. I think the statute, the tax, and the decision of the trial court should each and all be upheld.