JUSTICE RICE,
dissenting.
¶61 The Court eschews any attempt to analyze the extensive record evidence and instead relies heavily on the presumption that because Bresnan provides some telecommunications services, nearly all of its property can be assessed by the Department under class thirteen. I believe that the Court has disregarded the plain wording and intent of Montana’s property classification statutes and failed to properly apply the “physical attributes” and “use and productivity” tests.
¶62 The proper application of these tests results in companies being taxed under multiple property classes, depending on the use of their property. The District Court extensively analyzed and entered findings about this system, including the property tax classifications applied to companies such as Montana Dakota Utilities, Northwestern Energy, Avista Corporation, Portland General Corporation, and Yellowstone *45 Valley Electric Cooperative, all of which are taxed in multiple classes. More specifically, regarding the telecommunications industry, the District Court found that ‘‘[telecommunications companies that report for central assessment under Class Thirteen also report and are assessed locally for certain of their Montana property under Class Eight, including Sprint Nextel, Qwest, and CenturyTel.” The court found that the Cable & Communications Corporation, a company that provides cellular telephone and cable television services, “reports its cellular telephone properties for central assessment under Class Thirteen while reporting its cable television properties for local assessment under Class Eight.”
¶63 Regarding Bresnan, the District Court found from the extensive evidence presented that “[o]ver 97% of Bresnan’s Montana bandwidth is used exclusively for the one-way transmission of video programming.” Further, “[s]tate-wide, 917 [of Bresnan’s] channels were devoted exclusively to the one-way transmission of video programming, while 26 channels were devoted to voice/data, and 28 channels were used for Video-on-demand (which also is one-way video transmission).”[1] To summarize its lengthy findings, the court found that Bresnan’s properties “primarily were and are used to provide the one-way transmission to subscribers of video programming.” The District Court’s findings are supported by substantial evidence and have not been overturned. The Court’s approach is simply to assume that because Bresnan has telecommunications capabilities, the Department is authorized to tax nearly all of its property under class thirteen.
¶64 Turning to the statutes, we are to start with the principle that “[t]ax statutes must be construed in favor of the taxpayer.” Omimex, ¶ 25. The statutes make clear that holding commercial property that facilitates the two-way transmission of voice, image, and data qualifies an entity as a telecommunications services company. See § 15-53-129(10)(a), MCA (“Retail telecommunications” means “the two-way transmission of voice, image, data, or other information over wire, cable, fiber optics, microwave, radio, satellite, or similar facilities that originates or terminates in this state”). Indeed, the Court correctly notes that by definition, “[a] ‘telecommunications services provider’ offers retail telecommunications services.” Opinion, ¶ 36 (citing § 15- *46 53-129(14), MCA). Because Bresnan holds some two-way telephony and internet property, it operates, in part, as a telecommunications company. However, the Court gets sidetracked by then deducing that § 15-6-156(l)(d), MCA, allows the Department to classify nearly all of Bresnan’s property under class thirteen, Opinion, ¶ 40, when in reality, only some of that property-a very small fraction of it-actually facilitates the two-way transmission of voice, image, and data.
¶65 The statute does not require that all property of a telecommunications services company is to be taxed under class thirteen. By allowing the Department to tax Bresnan’s one-way property under class thirteen, the Court disregards the basic premise of our property classification system-different types of property are taxed in different classes. N. Pac. Ry. v. Sanders Co., 66 Mont. 608, 615-16, 214 P. 596, 599 (1923) (determining “[cjlassification must be based upon substantial distinctions which make one class really different from another.”); see § 15-6-101(2), MCA. The Legislature made a conscious decision to tax cable television systems at a 3% rate under class eight, § 15-6-138(l)(k), MCA, and telecommunications services property at a 6% rate under class thirteen, § 15-6-156(l)(d), MCA. We should not permit the Department to ignore this distinction.[2] Consistent with the classification system as a whole and the duty to construe the statutes in favor of the taxpayer, only property that actually meets the definition of telecommunications services property should be so classified. Thus, the statutes require an apportionment of taxes between Bresnan’s two-way transmission property-which demarcates a telecommunications services company in the first place-and its predominately one-way cable television property.
¶66 The Court’s determination that the “legislature intended to include all other property that a telecommunications services provider owns in class thirteen,” Opinion, ¶ 41, does great harm to not only Bresnan, but potentially to the property tax system as a whole. This holding runs directly counter to the property classification structure and to the manner in which telecommunications companies-and other *47 companies-are actually taxed. For example, class nine property includes “allocations for centrally assessed natural gas distribution utilities ....” Section 15-6-141(l)(d), MCA. Under the Court’s analysis, this language would necessarily incorporate all properties of natural gas distribution utilities into this class and tax them at a 12% rate, see § 15-6-141(2). Clearly, this is not the case, as other utility property, such as “air and water pollution control equipment,” is classified under class five and taxed at a rate of 3%. See § 15-6-135(l)(b), (5).
¶67 Moreover, the Court fails to apply our use and productivity test with any precision. During oral argument, Bresnan analogized its property to a superhighway consisting of800 lanes. 796 of these lanes are filled bumper-to-bumper with trucks travelling one way, 24 hours per day, 365 days per year. The remaining 4 lanes contain cars travelling two ways. These cars do not move all the time, only sporadically. The trucks in this analogy represent Bresnan’s one-way cable television property. The cars represent Bresnan’s two-way telecommunications services property. Accordingly, after making extensive findings, the District Court determined that the overwhelming use of Bresnan’s property is one-way transmission that receives and amplifies television broadcast signals. The Court’s wholesale reliance on the Department’s audit does not render these findings clearly erroneous-M. R. Civ. P. 52(a)(6) requires that we “give due regard to the trial court’s opportunity to judge the witnesses’ credibility.” Both parties’ experts testified that Bresnan operates a cable television system. Class eight property includes “cable television systems,” § 15-6-138( l)(k), MCA, which by definition “receiveG and amplif[y] the signals broadcast by one or more television stations.” Section 35-18-102, MCA.
¶68 The Court sidesteps the hard work of analyzing the record evidence, declining “to parse the number and type of electrical data signals that Bresnan transmits over its network or the allocations of the network’s physical elements ....” Opinion, ¶ 40. However, nothing could be more indicative of a network’s use than the number and type of data signals actually being transmitted over it. In sum, the Court claims to be classifying property on the basis of use, Opinion ¶¶ 31,34, 40, but ultimately fails to do so by allowing the Department to place nearly all of Bresnan’s property into class thirteen.
¶69 Bresnan has been changing the services it provides from cable television to telecommunications services. Consistent therewith, Bresnan has been reporting those changes, listing properties that are utilized for telecommunications services under class thirteen. *48 However, the Department of Revenue got up one morning and decided to flip the entire company into class thirteen, thereby increasing Bresnan’s taxes by an incredible 329% overnight, from $1.7 million to $7.3 million, even though the overwhelmingly predominant use of Bresnan’s property is for class eight purposes. This disincentive for companies to expand their telecommunications services was not created or intended by the Legislature, but is the work of the Department. It should be called highway robbery-perhaps the first case of information superhighway robbery by the tax authorities.
¶70 I dissent.
JUSTICE McKINNON joins in the dissenting Opinion of JUSTICE RICE.

 “Analog electronic communication long has been measured in “bandwidth” in units of MegaHertz (“MHz”). The Federal Communications Commission (“FCC”) historically defined a “channel” as six (6) MHz.”

 The Court argues that by classifying nearly all of Bresnan’s property under class thirteen, the Department is simply addressing “an administrative matter within its broad discretion.” Opinion, ¶ 43. However, we have also held that an agency’s implementation of a statute must be “consistent and not in conflict with the statute” and must “effectuate the purpose of the statute.” Mont. Trout Unlimited v. Mont. Dept. of Nat. Resources and Conserv., 2006 MT 72, ¶ 36, 331 Mont. 483, 133 P.3d 224 (citation omitted) (discussing an agency’s rulemaking authority).